Brian PHILLIPS,

v.

Jo Anne B. BARNHART,
Commissioner of
SSA

Brian D. Phillips, Appellant.

No. 03–2236.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
LAR 34.1(a) Feb. 12, 2004.

Decided March 10, 2004.

Jeffrey L. Greenwald, Allentown, PA, for Appellant.

Connie Hoffman–Healey, Social Security Administration, Philadelphia, PA, for Appellee.

Before: SCIRICA, Chief Judge, ROTH and MCKEE, Circuit Judges.

## OPINION

MCKEE, Circuit Judge.

Brian D. Phillips appeals the district court's decision affirming the final decision of the Commissioner of Social Security that Phillips is not entitled to disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1838f. For the reasons that follow, we will affirm.

## I.

Phillips initially applied for DIB and SSI on November 3, 1997. Both applications were denied initially and upon reconsideration. He did not pursue these applications and they are not at issue here.

On November 3, 1998, Phillips filed new applications for DIB and SSI alleging disability since April 1, 1997, due to a back impairment.[1] The Pennsylvania Bureau of Disability Determination denied his applications initially and upon reconsideration. He requested an administrative hearing before an administrative law judge ("ALJ"). That hearing was held on October 12, 1999, at which Williams, with counsel, was present and a vocational expert ("VE") testified. On November 22, 1999, the ALJ decided that Phillips had the ability to perform a limited range of sedentary work with a sit/stand option and was, therefore, not disabled under the Act. 42 U.S.C. § 423(d)(1), (2). Phillips requested review of the ALJ's decision by the Appeals Council. On February 10, 2000, the Appeals Council denied his request for review, making the ALJ's decision the final decision of the Commissioner.

With his administrative remedies exhausted, Phillips filed suit in the district court. In time, the parties filed motions for summary judgment. On January 27, 2003, the magistrate judge to whom the action was assigned issued a Report and Recommendation ("R & R"), recommending that the Commissioner's motion for summary judgment be granted. Phillips filed objections, but the district court affirmed the Commissioner's decision. This appeal followed.

## II.

Phillips was thirty-six at the time of the alleged onset of his disability; a "younger individual" under the Act.[2] He has a high school education and past work experience as a warehouse worker. The VE classified Phillips's past work as semi-skilled, heavy work.

---

1. Phillips amended his alleged disability onset date to September 1998 at the administrative hearing.

2. 20 C.F.R. §§ 404.1563, 416.963. Age is not considered a significant impediment to adapting to new work situations for younger persons, *id.,* as is a positive vocational factor. 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(h).

## A. Medical Evidence.

Phillips sought medical treatment on September 8, 1998, with Joseph J. Grassi, M.D., an orthopedic specialist. Dr. Grassi found that Phillips had left L5 radicular impingement syndrome, or a L5–S1 disc herniation. Dr. Grassi told Phillips to obtain a Magnetic Resonance Imaging ("MRI") examination of his lumbar spine.

On September 9, 1998, Phillips had a MRI which showed a left sided disc herniation at L5–S1, with sequestered fragments in the spinal canal.[3] Phillips underwent an electromyogram ("EMG") test on September 17, 1998, that showed electrodiagnostic evidence of left S1 radiculopathy with some possible involvement on the left side.

Phillips was evaluated by Stephen P. Falatyn, M.D., an orthopedic surgeon, on September 21, 1998. Phillips told Dr. Falatyn that his current lower back and left leg pain started a month earlier while he was at home. Phillips also told Dr. Falatyn that he had similar pain in April of 1997, which improved with physical therapy.

Dr. Falatyn's physical examination showed that Phillips's motor strength was essentially normal. Forward bending caused moderate back pain, and Phillips had palpable muscle spasms. His straight leg-raising test was normal on the right side.[4] Dr. Falatyn discussed surgical and non-surgical options with Phillips, and noted that he would observe him for several weeks to determine if non-surgical methods, such as physical therapy and epidural steroid injections, would improve Phillips's condition. On September 28, 1998, Phillips had a myeleogram of the lumbar spine that showed truncation of the right side S1 nerve root.

At his next evaluation with Dr. Falatyn on October 12, 1998, Phillips reported a slight decrease in back and left leg pain. He also told Dr. Falatyn that he was looking for work that did not involve lifting. Upon physical examination, Phillips's motor strength was close to normal.

Dr. Falatyn reported marked improvement with regard to Phillips's back and left leg pain complaints on November 9, 1998. Phillips's motor strength during Dr. Falatyn's examination was almost normal. Phillips told Dr. Falatyn that he was more active. Dr. Falatyn prescribed a lumbar corset.

Phillips was again evaluated by Dr. Falatyn on December 21, 1998. That physical examination again revealed close to normal motor strength with increased mobility. Phillips said he had increased left leg and back pain and wanted to pursue surgical intervention.

However, despite his request for surgery, Phillips did not see Dr. Falatyn again until April 15, 1999. At that time, Phillips told Dr. Falatyn that he had been managing his pain without medical intervention. However, even though his motor examination was normal, Phillips still wanted to pursue surgical intervention.

---

3. Degenerative changes, with or without trauma, may result in protrusion of the disc, i.e., bulging disc, or rupture of the nucleus through the annular fibrosis, i.e., herniated disc. *The Merck Manual*, 1488–90 (17th ed.1999). Bulging and herniated discs are asymptomatic unless they irritate a nerve root for the spinal cord. *Id.* at 1489.

4. A straight leg-raising test is used to evaluate possible nerve root irritation. Gunnar Andersson, M.D., and Thomas McNeill, M.D., *Lumbar Spinal Syndromes: Evaluation and Treatment*, 78 (1989). The patient sits or lies on the examining table and the examiner attempts to elicit, or reproduce, physical findings to verify the patient's reports of back pain by raising the patient's legs when the knees are fully extended. *Id.*

On May 26, 1999, Phillips underwent a left L5–S1 discectomy. He tolerated the procedure well and was released from the hospital with instructions to see Dr. Falatyn within two weeks.

Dr. Falatyn evaluated Phillips on June 9, 1999, two weeks after the surgery. Based on his physical examination, Dr. Falatyn opined that Phillips's motor strength was intact. Phillips reported walking up to two blocks and occasionally using a cane. He also reported having left leg and back pain.

On July 9, 1999, Dr. Falatyn evaluated Phillips again. Phillips reported occasional moderate and severe pain in his left leg. He also told Dr. Falatyn that he had back pain. However, he also reported being able to stand for two hours before having left leg pain. Prior to surgery, Phillips reported being able to stand less than one hour. Dr. Falatyn found that Phillips's motor examination was normal. He also noted that Phillips's incision was healing well and that he should continue with the home exercise program. Dr. Falatyn checked a box on a Pennsylvania Department of Public Welfare employability form indicating that Phillips was temporarily disabled.

Phillips had another lumbar spine MRI examination on September 9, 1999. It showed normal lumbar vertebral height and alignment and a mild broad based disc bulge at the L4–L5 level, resulting in mild to moderate foraminal compromise. Following that examination, Dr. Falatyn evaluated Phillips on September 20, 1999. Phillips reported having back and left leg pain. Dr. Falatyn recommended that Phillips continue with the home exercise program and stop smoking. He also discussed the possibility of further surgical intervention with Phillips.

## B. Hearing Testimony.

Phillips testified to occasional use of a cane, although it was not prescribed by Dr. Falatyn, and a lumbar corset when on his feet for one hour or more. He testified that he tried to avoid the use of pain medication because it made him groggy. He also testified that Dr. Falatyn did not impose any specific physical limitation on him other than avoiding heavy lifting and bending.

As to daily activities, Phillips testified to cooking, cleaning dishes, shopping and watching television. At the administrative hearing, he pointed to the origin of his leg pain as being in the right leg. He acknowledged being involved in vocational testing at Good Shephard Occupational Vocational Rehabilitation Center ("OVR") in early 1998. When questioned by the ALJ regarding his drug test failure while a client at the OVR, Phillips responded that he was caught by surprise and was embarrassed by having failed the drug test. The ALJ also questioned Phillips about his lack of motivation for job placement while at the OVR. Phillips responded that he was not motivated because he could not perform the jobs recommended by the OVR.

The ALJ also sought testimony from William Hausch, a VE, to determine whether there were jobs in the national economy that an individual with Phillips's vocational profile cold perform. The ALJ asked the VE to consider an individual of Phillips's age, with a similar educational and vocational background. The hypothetical individual was limited to unskilled sedentary work that required a sit or stand option.

The VE testified that there was work that an individual with Phillips's vocational profile could perform, including sedentary jobs of systems monitor, cashier, and order clerk, for which there were thousands of

jobs in the regional and national economies.[5]

## III.

Our scope of review is limited to determining if the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383©(3); *Monsour Medical Ctr. v. Heckler,* 806 F.2d 1185, 1190 (3d Cir.1986). Substantial evidence refers to that evidence that "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir.1971).

## IV.

To meet the disability standard under the Act, Phillips was required to prove:

[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months.

42 U.S.C. § 423(d)(1). Phillips was also required to show that he had a physical or mental impairment of such severity that:

he is not only unable to do his previous work but cannot considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2).

The Commissioner utilizes a five-step sequential evaluation process to evaluate SSI and DIB claims. 20 C.F.R. §§ 404.1520, 416.920; *see generally Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The process requires the Commissioner to consider, in sequence, whether a claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations and is considered per se disabling, (4) can return to his past relevant work and, (5) if not, whether he can perform other work. 20 C.F.R. §§ 404.1520, 416.920. If an affirmative decision can be reached at any stage in the sequential evaluation process, further evaluation is not necessary. 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step four, the ALJ is required to evaluate whether the claimant is able to return to his past work. *Id.* Here, the Commissioner found that Phillips had shown that he could no longer perform his past heavy work as a warehouse worker. Therefore, the burden of production shifted to the Commissioner at the fifth step of the sequential evaluation process to produce evidence that Phillips could perform other work in the economy given his residual functional capacity ("RFC"),[6] age, education and work experience. *Id.* The Com-

---

5. Sedentary work involves lifting no more that ten pounds at a time, and occasionally lifting or carrying of articles like docket files, ledgers and small tools. Sedentary jobs require mostly sitting with occasional walking and standing to carry out job duties. 20 C.F.R. §§ 404.1567(a), 416.967(a).

6. Residual functional capacity refers to what a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545, 416.945.

missioner met that burden by producing evidence from the VE that Phillips could perform a significant number of sedentary jobs in the national economy. Therefore, the Commissioner found that Phillips was not disabled under the Act. 42 U.S.C. § 423(d)(1), (2).

■ In his appeal, Phillips contends that substantial evidence does not support the Commissioner's decision. He makes a number of arguments in support of his contention. First, he claims that the ALJ only considered a selective portion of the diagnostic evidence, i.e., MRI scan, CT scans, CT myelogram and EMG test, pertaining to his back impairment. More particularly, Phillips claims that the ALJ did not consider diagnostic tests from September of 1998 which were taken after his complaints about lower back and leg pain which led to his separation from employment as a warehouseman. We disagree.

The ALJ specifically stated that she gave careful consideration to all of the medical evidence and medical opinions of record, including all of the diagnostic tests. In fact, the diagnostic tests which Phillips claims the ALJ did not consider are contained in Exhibit 14F of the record and the ALJ cited to Exhibit 14F numerous times in her decision. Nonetheless, Phillips faults the ALJ for failing to specifically discuss the September 17, 1998 EMG which demonstrated evidence of a left side S1 radiculopathy, with some possible involvement on the left side. However, the ALJ did specifically refer to a September 9, 1998 MRI which demonstrated a left side disc herniation at L5–S1 with involvement of the S1 nerve root. The September 17th EMG merely confirmed the finding of the September 9th MRI.[7]

In addition, Phillips's argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act. Rather, a claimant must show that the impairment resulted in disabling limitations. *Petition of Sullivan,* 904 F.2d 826, 845 (3d Cir.1990).

■ In that regard, Phillips's second argument is that the ALJ failed to consider the opinion of his treating physician, Dr. Falatyn. Again, we disagree. Dr. Falatyn's treatment notes are notably absent any specific work-related limitations. Similarly, his clinical findings do not support the existence of any disabling limitations.

Prior to his May 26, 1999 surgery, Phillips displayed essentially normal and intact lumbar motor strength. Phillips also reported increased mobility, a slight decrease in pain and participation in more activities. Significantly, during this time, Phillips reported looking for employment that did not involve lifting.[8] Therefore, Dr. Falatyn's treatment notes prior to his Phillips's disc surgery do not portray a totally debilitating impairment. Likewise, Dr. Falatyn's treatment notes after Phillips's disc surgery also do not support Phillips's disability claim. Two weeks after surgery, Phillips reported being able to walk two blocks. Dr. Falatyn reported that Phillips's motor strength was normal. About one month after surgery, Phillips

---

7. A written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence. *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir.1995). Moreover, the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it. *Black v. Apfel,* 143 F.3d 383, 386 (8th Cir.1998).

8. Phillips's admission regarding his search for employment occurred after his alleged onset date of disability.

said he was able to stand for two hours at a time. In sum, there is nothing in Dr. Falatyn's treatment notes, either pre- or post-surgery, that demonstrates a disabling impairment.

Not unexpectedly, Phillips argues that the ALJ erred by failing to consider Dr. Falatyn's July 9, 1999 medical opinion, as expressed on a Pennsylvania Department of Welfare check-list form, in which Dr. Falatyn indicated that Phillips was temporarily disabled from September 8, 1999 to October 1, 1999. However, our review of the hearing decision shows that the ALJ properly considered Dr. Falatyn's opinion as expressed in the form.[9] In fact, she specifically cited to the check-list form in her written decision. In addition, the box checked by Dr. Falatyn defined "temporarily disabled" as "less than 12 months." However, in order to be eligible for disability under the regulations, Phillips must be disabled for a period of twelve consecutive months. 42 U.S.C. § 423(d)(1)(2); *Barnhart v. Walton*, 535 U.S. 212, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Significantly, if Dr. Falatyn was of the opinion that Phillips was unable to engage in substantial gainful activity on a permanent basis, or for twelve months or more, it would stand to reason that he would have indicated such an opinion on the form.[10] Dr. Falatyn opined that Phillips was temporarily disabled—less than twelve months. Thus, it is reasonable to conclude that

Phillips's supposed disability did not last for twelve consecutive months.

Furthermore, to the extent that Dr. Falatyn, by checking the box, actually opined that Phillips was disabled, his opinion is entitled to controlling weight only if it is well-supported by clinical and laboratory evidence and is not inconsistent with other substantial evidence of record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). However, as discussed above, Dr. Falatyn's treatment notes, and in particular the treatment notes during the dates indicated on the check-list, do not support a finding that Phillips was disabled at any time. Therefore, Dr. Falatyn's opinion, as expressed on the check-list form, does not support a finding of disability.

■ Phillips' third argument is that the ALJ failed to properly evaluate his subjective complaints of pain. However, our review of the record shows that the ALJ correctly determined that Phillips' subjective complaints of pain were not entitled to full credence. A claimant's statements about pain symptoms do not alone establish disability. The Act requires objective medical evidence showing the existence of an impairment which could reasonably be expected to produce the claimed pain. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1529(a), 416.929(a); *Hartranft v. Apfel*, 181 F.3d 358 (3d Cir.1999). In evaluating symptoms including pain, the regulations provide that the ALJ consider a

---

9. The information on the check-list form was for purposes of determining Phillips' eligibility for state medical welfare benefits, not DIB or SSI. A finding of disability under the Act is a legal determination to be made by the ALJ. 20 C.F.R. §§ 404.1527(e), 416.927(e). The opinion expressed by checking a box on a form is conclusory in nature. Indeed, Dr. Falatyn did not cite to any specific work restrictions resulting from Phillips' impairments that would have prevented him from performing all work activity. Under the Commissioner's regulations, this kind of conclusory report

is not entitled to significant weight. 20 C.F.R. §§ 404.1527(d)(2)(ii), 416.927(d)(2)(ii); *see also Mason v. Shalala*, 994 F.2d 1058, 1965 (3d Cir.1993) (holding that a form report that requires a physician only to check a box or fill-in blanks is not substantial evidence by itself).

10. The check-list form also contained boxes indicating: temporarily disabled—12 months or more, or permanently disabled.

claimant's daily activities; the type, dosage, and effectiveness of pain medication; the treatment, other than medication, received for relief of other symptoms; and any measures used to relieve pain or other symptoms. *Id.*

Here, the ALJ's finding that Phillips' subjective complaints of pain were not credible to the extent Phillips alleged is fully supported. Phillips' complaints of pain exceeded the objective findings of record. As noted above, Dr. Falatyn's treatment notes, both before and after surgery, do not depict a totally disabling back and leg impairment. In addition, Phillips' conservative treatment history supports the ALJ's determination that Phillips' subjective complaints of pain were not entitled to full credence. After his surgery, there is no indication that Phillips' condition required treatment at a pain clinic, a second orthopedic opinion, treatment in an emergency room, or an examination by a neurologist. On the contrary, after surgery Phillips only required intermittent pain medication and an at-home exercise program. Finally, and most significantly, Phillips' own testimony shows that he was less than credible. The ALJ noted that at the administrative hearing, Phillips identified the origin of his pain as his right leg. However, Dr. Falatyn's treatment notes consistently indicated that Phillips suffered from left leg pain. The ALJ also noted that Phillips was evasive when he was questioned about failing a drug test at the OVR and did not provide a plausible explanation about his failure to fully participate with job placement while at the OVR.

■ Phillips' fourth, and last, argument is that the ALJ failed to consider him for a closed period of disability.[11] Although

Phillips' argument is not all that clear, he appears to argue that since the ALJ found that since he could perform sedentary work in September 1999, one year after the alleged onset date of his disability, it follows that his residual functional capacity must have been less than sedentary before that time. Consequently, he claims a closed period of disability for the time before 1999. However, this argument ignores the ALJ's finding that Phillips had the residual functional capacity to perform a limited range of sedentary work from his alleged onset date of disability, i.e., September 1998, and at all times thereafter. Therefore, Phillips cannot point to a period of twelve consecutive months in which he was disabled under the Act. Accordingly, the record does not support a finding that Phillips was entitled to a closed period of disability.

## V.

For all of the above reasons, we find that the Commissioner's determination that Phillips was not disabled is supported by substantial evidence. Accordingly, we will affirm the decision of the district court.

---

11. For further discussion of a "closed period of disability", *See,* Tommy W. Rogers and Willie L. Rose, *Workers' Compensation and Public Disability Benefits Offsets from Social Security Disability Benefits,* 29 So. U.L.R. 57, 67 n. 66 (2001).