# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 08-1311

———————

Theresa Willcox,                        *

                                       *

           Plaintiff-Appellee,      *

                                       *    Appeal from the United States

     v.                             *    District Court for the

                                         *    District of Minnesota.

Liberty Life Assurance Company    *

of Boston,                            *

                                         *

           Defendant-Appellant.   *

———————

Submitted: November 14, 2008
Filed: January 12, 2009

———————

Before MURPHY, HANSEN, and RILEY, Circuit Judges.

———————

MURPHY, Circuit Judge.

Theresa Willcox brought this action against Liberty Life Assurance Company of Boston (Liberty Life) pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), alleging that Liberty Life had wrongfully denied her claim for long term partial disability benefits. Both sides moved for summary judgment, and the district court[1] granted Willcox's motion after concluding that Liberty Life had abused

———————

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

its discretion by ignoring evidence in support of her claim. Liberty Life appeals, and we affirm.

## I.

Theresa Willcox was working as a claims adjustor for Blue Cross Blue Shield of Minnesota (BCBS) when she was injured in an automobile accident in March 2003. Willcox reports that as a result of the accident she has suffered from severe pain in her lower back and lower left leg. After chiropractic treatments failed to relieve her symptoms, Willcox sought more aggressive alternatives. In November 2004 she underwent a spinal discectomy and fusion. After several months recuperating, Willcox resumed part time work from home in February 2005. The surgical procedure appeared to alleviate the pain in her back, but Willcox claims to continue suffering from pain radiating into her lower left leg due to an ongoing irritation of the nerve root emanating from the L5 segment of the spine, a condition known as an L5 radiculopathy.

Willcox asserts that as a result of her continuing leg pain she is unable to return to full time work. The evidence regarding Willcox's alleged radiculopathy is complicated and spans several years of diagnosis and treatment. Medical information about her condition was obtained from electrodiagnostic tests, physical examinations, imaging scans, and epidural injections.

Over the relevant period Willcox underwent three electromyograms (EMGs). The first two predated her November 2004 lumbar fusion surgery and produced normal results. The third, performed in March 2005, was postoperative and showed a slight abnormality which could be associated with an S1 radiculopathy. The abnormality, however, could also have been a result of Willcox's surgery.

Willcox appeared for at least fifteen physical examinations with a variety of clinicians over the period from November 2003 through November 2005. During these examinations, the attending clinicians evaluated Willcox for some combination of muscle weakness, sensory loss, "foot drop[2] and straight leg raising (SLR) ability. These various objective physical symptoms may be associated with an L5 radiculopathy. Based on our review of the record, we note the following:

Seven exams found no indication of muscle weakness. At least two found generalized weakness in the left leg, but nothing distinct to the areas served by the L5 nerve. Three others found weakness indicating a possible L5 radiculopathy.

- Two exams found no loss in sensation. Another two found evidence of impaired sensation consistent with L5 radiculopathy.

- In four exams there was no observed foot drop. The condition was observed in two exams.

- Seven SLR tests[3] were negative for L5 radiculopathy. Another produced mixed results. Two others were positive.

- One exam revealed "no discernible deficits" without discussing specific observations.

A magnetic resonance imaging (MRI) procedure performed in April 2003 revealed moderate disc bulging at the L5-S1 segment of Willcox's spine and "mild front/back left foraminal narrowing and mild flattening of the left L5 ganglion." This

---

[2]Foot drop occurs when muscle weakness causes the foot to slap against the floor while walking.

[3]During an SLR test a "patient sits or lies on the examining table and the examiner attempts to elicit, or reproduce, physical findings to verify the patient's reports of back pain by raising the patient's legs when the knees are fully extended." Phillips v. Barnhart, 91 F. App'x 775, 777 n.4 (3d Cir. 2004) (unpublished).

condition may put pressure on the L5 nerve, causing radicular symptoms. A second MRI in February 2004 showed essentially the same condition, but a reviewing clinician noted the scan did not necessarily indicate "definite nerve root impingement." A computed tomography (CT) scan in January 2005 showed that the "[l]umbosacral foramina are widely patent and normal in caliber," suggesting no pressure on the nerve root.

In June 2003 Willcox received an epidural injection of a local anesthetic at her left L5 nerve root, producing "80% initial improvement" in her symptoms. This relief lasted about one day and suggested that irritation of her L5 nerve could be responsible for her pain. In March 2004 Willcox was administered an epidural at her S1 nerve root which first produced a "70% decrease in her symptoms" but ultimately aggravated her condition, causing her to miss a week of work.

BCBS provided Willcox with short term partial disability payments for six months following her November 2004 disc fusion surgery. It maintained long term disability coverage for its employees through Liberty Life, and Willcox sought continuing benefits from Liberty Life when her short term benefits expired on May 22, 2005. In February 2006 Liberty Life concluded, based in large part on an evaluation of the medical evidence by neurologist Dr. David Marks, that Willcox was capable of performing her job as a claims adjustor and was therefore not entitled to disability benefits. Willcox appealed, and in May 2006 Liberty Life affirmed its earlier determination. Thereafter Willcox filed this suit pursuant to ERISA § 502, 29 U.S.C. § 1132.

Willcox submitted fifteen exhibits to the district court which were drawn from publicly available sources. They mainly consisted of generic anatomical charts, medical dictionary entries, journal articles, and the like. One exhibit concerned the qualifications of Liberty Life's reviewing physician, Dr. Marks. None of the exhibits contained any medical data or diagnostic results specific to Willcox or her injury.

-4-

Liberty Life moved to strike the exhibits, noting that none of them had been provided to the company nor considered by it during its administrative process. Liberty Life argued in the alternative that if the district court were inclined to receive the exhibits, it should permit the company to offer rebuttal exhibits and remand the case for the company's further administrative review rather than usurp the plan administrator's ability to weigh and consider evidence in the first instance.

The district court observed that it was generally not appropriate in ERISA cases for a reviewing court to consider evidence outside the administrative record. It therefore decided to remand the case back to Liberty Life so that the company could conduct an initial review and evaluation of the additional evidence. In returning the case for further administrative review the district court ordered Liberty Life to consider Willcox's fifteen proffered exhibits, the rebuttal exhibits the company had identified, and "[a]ll other evidence relating" to the parties' positions. Liberty Life's request for permission to move for reconsideration was denied.

Following the district court's order Willcox submitted her generic exhibits on remand. In addition she produced personal medical records related to treatments she received in 2006 and 2007, questionnaires completed by two of her treating physicians regarding the specifics of her diagnosis, and two witness statements (one by her) attesting to her physical limitations. Liberty Life retained neurologist Dr. Steven McIntire to conduct an independent peer review. After reviewing the supplemented administrative record, Dr. McIntire concluded that Willcox might be restricted in her ability to walk, stand, or lift objects, but that such limitations ought not to affect her performance as a sedentary claims adjustor. Based on his findings, Liberty Life again denied Willcox's claim.

The case then returned to district court which took up the competing motions for summary judgment. The district court determined that Liberty Life had abused its discretion by failing to "evaluate Plaintiff's medical records in their totality" and

by "blindly" relying on Dr. McIntire's "cursory" medical opinion which it characterized as "almost devoid of any rationale," and granted summary judgment to Willcox. Its order makes no reference to any of the exhibits Willcox submitted after the initial administrative review, and the district court does not appear to have relied on them in its decision. Liberty Life appeals, challenging both the decision to reopen the administrative record as well as the court's conclusion that the company abused its discretion.

## II.

The parties agree that the insurance policy at issue is governed by ERISA and that Liberty Life's decision to deny Willcox's claim is subject to deferential review for abuse of discretion. As the district court recognized, the general rule is that "review under the deferential standard is limited to evidence that was before" the administrator. Cash v. Wal-Mart Group Health Plan, 107 F.3d 637, 641 (8th Cir. 1997) (internal quotation marks omitted). After considering the arguments made by the parties to the district court, however, it decided to remand for Liberty Life to consider the new submissions by Willcox and "[a]ll other evidence relating to her claim" put forward by either party. We review a decision to remand a case for additional administrative action for abuse of discretion. Cf. Ingram v. Barnhart, 303 F.3d 890, 893 (8th Cir. 2002) (applying abuse of discretion standard to the district court's decision to remand to the commissioner of Social Security Administration).

At oral argument counsel for Liberty Life acknowledged that as part of its presentation to the district court it had invited remand for consideration of new evidence and that the real issue on appeal is not the propriety of the order to remand but the admissibility of Willcox's supplemental exhibits. Willcox argued that her proffered exhibits were drawn from widely available public sources and not unique to her case, distinguishing them from cases in which reviewing courts declined to consider extra record evidence specific to a plaintiff's symptoms or diagnosis. See,

e.g, Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 630 (8th Cir. 2007); Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998).  Willcox maintained that her exhibits were simply meant to provide context to assist the district court in interpreting complex medical evidence. For example, one exhibit provided a medical definition of "foot drop," another defined "radiculopathy;" others discussed the diagnostic relevance of epidural injections or suggested that EMGs may fail to detect an active radiculopathy; yet another discussed how a narrowing of the space through which a nerve root passes could place pressure on the nerve.

We expressed concern in Cash that explanatory material may be "outside the permissible scope of deferential review," 107 F.3d at 642, but the objectionable material in that case was an affidavit prepared by the plaintiff's physician in anticipation of litigation.  By contrast, the exhibits offered by Willcox in the district court were culled from widely available medical publications and websites, all of which had been produced with no thought to litigation.  In previous cases this court has itself cited public medical sources on its own initiative in order to provide context for a decision, see, e.g., Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 585-86 nn.4-7 (8th Cir. 1999), and at least one circuit has explicitly held that generic materials may be introduced in the district court in ERISA cases to provide context and guidance.  Vega v. Nat'l Life Ins. Servs., Inc. 188 F.3d 287, 299 (5th Cir. 1999) (en banc) ("[E]vidence . . . that assists the district court in understanding the medical terminology or practice related to a claim would be . . . admissible.").  But even if we decline to adopt a general rule permitting reviewing courts to consider generic medical exhibits in ERISA cases, the district court did not take it upon itself to review and consider the new evidence, but rather asked Liberty Life to do so.  See King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 1006 (8th Cir. 2005) (en banc) (remand appropriate for "the administrator to consider in the first instance evidence received by the district court, but not presented to the administrator).

The district court's remand order reflected the deference it owed to the plan administrator:

> [R]emand will allow the administrator to consider the evidence submitted to the Court but not presented to the administrator. Otherwise, the Court would be acting as a claims administrator by determining what Liberty Life's decision would have been had it been aware of the information in the exhibits at the time it made the benefits determination. . . . [T]he Court's responsibility is to determine whether Liberty Life's denial of benefits was an abuse of discretion—not whether Willcox was, in the Court's view, entitled to disability benefits.

The district court thus preserved the company's prerogative to conduct an initial assessment of the expanded record and to submit its own rebuttal exhibits, contemplating that Liberty Life would consider all appropriate evidence in the record. When the case returned after the remand, the district court applied an abuse of discretion standard rather than attempting a de novo assessment of the evidence.

Liberty Life's alternative suggestion for a remand opened the door for the district court to send the publicly available exhibits offered by Willcox to Liberty Life for further administrative review without reaching the issue of whether the court might undertake its own review of them. Liberty Life should not now be heard to complain that the district court followed a path which the company itself had suggested as an alternative. Based on this record we conclude that it was not an abuse of discretion for the district court to remand the case. Although the subsequent inclusion of personal materials in addition to the generic exhibits was more problematic, it does not appear that the district court considered them in its evaluation of Liberty Life's performance as plan administrator. The ultimate issue in this appeal is whether Liberty Life abused its discretion in either its original review or the one following remand. Since we conclude that the company abused its discretion in its reviews both before and after the remand, any issue about the propriety of the remand is essentially moot.

We review de novo the district court's grant of summary judgment, applying the same deferential abuse of discretion standard to Liberty Life's denial of Willcox's claim. Shipley v. Ark. Blue Cross & Blue Shield, 333 F.3d 898, 901 (8th Cir. 2003). Under the abuse of discretion standard, "we look to see whether [the plan administrator's] decision was reasonable. In doing so, we must determine whether the decision is supported by substantial evidence, which is more than a scintilla, but less than a preponderance." Clapp v. Citibank, N.A. Disability Plan (501), 262 F.3d 820, 828 (8th Cir. 2001) (internal citations and quotation marks omitted).

Willcox's initial application for long term partial disability benefits was first reviewed for Liberty Life by Dr. Thomas Cuevas, a specialist in internal medicine. Dr. Cuevas concluded that the available records "do not establish impairment in her capacity to perform sedentary activities" but suggested that Liberty Life might wish to obtain the opinion of a neurologist or a specialist in physical medicine. Liberty Life then requested the opinion of an independent peer review physician, Dr. David Marks who is a neurologist. Dr. Marks began his report by listing the various medical records he reviewed. This list indicates that all of the medical evidence discussed here was in one form or another available to Dr. Marks. By his own estimate Dr. Marks spent two hours reviewing these materials. He ultimately concluded that Willcox "had no objective evidence of radiculopathy" and "as of May 21, 2005, was able to work in her job as a claims adjustor for Blue Cross-Blue Shield on a full time basis."

Adopting Dr. Marks's report, Liberty Life denied Willcox's claim on the basis that her condition was not disabling. Willcox promptly sought administrative review of the denial and supplemented her medical records at this time with a letter from her orthopedic surgeon, Dr. James Schwender. Dr. Schwender's letter elaborated on Willcox's symptoms and his opinion that she suffered from a "partial, permanent disability." Liberty Life again denied her claim, concluding that Dr. Schwender's letter did not "contain any new information" and quoting Dr. Marks's determination that there was "no objective evidence for a radiculopathy." This lawsuit followed.

Liberty Life's determination is reviewable under a deferential abuse of discretion standard. Under this standard its decision must be supported by substantial evidence, which is "more than a scintilla, but less than a preponderance." Clapp, 262 F.3d at 828. Liberty Life was entitled to seek and obtain a professional peer review opinion from Dr. Marks, but it was "not free to accept this report without considering whether its conclusions follow logically from the underlying medical evidence." Abram v. Cargill, Inc., 395 F.3d 882, 887 (8th Cir. 2005). Dr. Marks's report—intentionally or not—mischaracterizes the medical evidence in several important respects.

First, as the district court noted, Dr. Marks twice claimed in his report that the medical record showed "no objective evidence" of radiculopathy. This is not accurate. The record documents multiple instances of muscle weakness, loss of sensation, foot drop, positive SLR tests, a positive response to an epidural, and MRIs consistent with radiculopathy. It may be that Dr. Marks believed these reports were less compelling than other contrary indications, but this is not what he said. It was not accurate to claim that the record contained no objective evidence to support Willcox's claim. It may also be that Dr. Marks was simply careless in how he chose to summarize a large volume of conflicting data. It was nevertheless an abuse of discretion for Liberty Life to rely on his demonstrably incorrect conclusion that there was no objective evidence in the record to support Willcox's claim.

Second, Dr. Marks writes that "[Willcox] had a left L5 nerve block performed on 6/12/03 without any relief." This also is not accurate. The diagnostic report prepared in conjunction with the nerve block could not have been more clearly to the contrary. Under the prominent heading "CONCLUSION," the interpreting physician wrote "80% initial improvement after injection of steroid and local anesthetic in the left L5 nerve root sheath." According to Dr. Marks's own catalog of the materials provided to him, this diagnostic report was among the records at his disposal. His suggestion that the procedure offered Willcox no relief may indicate that he failed to

-10-

read the report or consulted it so cursorily that he missed its import. We conclude that Dr. Marks's report reflects an incomplete and selective picture of the medical evidence.

Third, even if Dr. Marks's report is accepted at face value, it at most addresses the alleged cause of Willcox's lower leg pain; it does not in any respect rebut the existence of the debilitating pain. On this point the record indicates that every medical professional actually to have examined Willcox—from her initial treating physician to her orthopedic surgeon to pain management consultants to physical therapists—uniformly accepted that her symptoms were real. There is absolutely no evidence that she was malingering or that her complaints were manufactured. While an ERISA plan administrator need not accord special deference to a treating physician's opinion, Black & Decker Disability Plan v. Nord, 538 U.S. 822, 825 (2003), an administrator may not "arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician," id. at 834. Moreover, eliminating one potential cause of a claimant's disability may be insufficient to deny a claim if the symptoms are otherwise credible and other potential causes exist. See Abram, 395 F.3d at 887 (abuse of discretion to consider only one possible cause of claimant's symptoms and ignore others).

A plan administrator abuses its discretion when it ignores relevant evidence. In Norris v. Citibank, N.A. Disability Plan (501), 308 F.3d 880, 885 (8th Cir. 2002), we held that a plan administrator had abused its discretion in part by failing to "address the extensive medical evidence relating to [the claimant's] disability or the consistent conclusions of her doctors and various [plan administrator] personnel that she could not work." See also Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 681 (8th Cir. 2005) (abuse of discretion to "ignore[] evidence that was directly related to the Plan's definition of disability").

-11-

Other circuits have made similar assessments. The Sixth Circuit has recently concluded that a plan administrator abused its discretion when it

> focused on slivers of information that <u>could be</u> read to support a denial of coverage and ignored—without explanation—a wealth of evidence that directly contradicted its basis for denying coverage. Such a decision-making process is not deliberate or principled, and the explanation provided was far from reasoned, as it failed to address any of the contrary evidence.

<u>Metropolitan Life Ins. Co. v. Conger</u>, 474 F.3d 258, 265 (6th Cir. 2007); <u>see also</u> <u>Moon v. Unum Provident Corp.</u>, 405 F.3d 373, 381 (6th Cir. 2005) (abuse of discretion to conduct "selective review of the administrative record" rather than "administrative record as a whole"). The Seventh Circuit had earlier come to a similar conclusion. <u>See</u> <u>Govindarajan v. FMC Corp.</u>, 932 F.2d 634, 637 (7th Cir. 1991) ("[The plan administrator's] selective review of the medical evidence and its completely erroneous assertion that there was no physical cause for the subjective symptoms of pain renders its decision not only unreasonable but arbitrary and capricious.").

On remand Liberty Life was given another opportunity to review the record and assess Willcox's claim. The company retained independent peer review physician Dr. Steven McIntire, a neurologist. Although Dr. McIntire concluded that "[t]here was not evidence of an ongoing active radiculopathy," he opined that Willcox should not stand or walk more than three to four hours in an eight hour day. Based on this limitation and a vocational case manager's assessment of Willcox's duties as a claims adjustor, Liberty Life concluded Willcox was able to resume her occupation full time and again denied her claim for long term partial disability benefits. This post remand decision is also reviewed for abuse of discretion.

Dr. McIntire's report shows that he had access to the same materials relied upon by Dr. Marks, yet his report is even more cursory. Although he notes in passing some evidence of generalized weakness in Willcox's left leg, he neglects to mention other evidence tending to support her claim. The unmentioned evidence included the results of her tests for foot drop, positive SLR, decreased sensation, and epidural injections. Only by ignoring such evidence, however, could Dr. McIntire conclude, as he does, that "[t]here was not evidence of an ongoing active radiculopathy." It was therefore an abuse of Liberty Life's discretion to rely on Dr. McIntire's incomplete, selective review of the medical evidence.

It is well settled that in ERISA cases a reviewing court may not "substitute [its] own weighing of the evidence for that of the administrator." Ferrari v. Teachers Ins. & Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002). But Liberty Life's obligation as an ERISA fiduciary required more than combing the record for evidence in its favor and abandoning its review upon discovering "more than a scintilla" of such evidence. See Metropolitan Life, 474 F.3d at 265. Liberty Life was required to evaluate the available evidence in its entirety before reaching a determination, particularly after the district court had ordered it on remand to consider all of the evidence relating to her claim. The record does not show that the company met this duty, and we therefore conclude Liberty Life abused its discretion in denying Willcox's claim.

## III.

For the foregoing reasons we conclude that the district court did not abuse its discretion by accepting Liberty Life's suggestion to remand the case for further administrative review but that Liberty Life abused its discretion by relying on the opinions of two reviewing physicians which mischaracterized the medical evidence and ignored key findings in support of Willcox's claim. Accordingly, we affirm the judgment of the district court.

_____