# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3276

_____

| | | |
|---|---|---|
| Antoine Khoury, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Group Health Plan, Inc., | * | District of Minnesota. |
| | * | |
| Defendant, | * | |
| | * | |
| Reliastar Life Insurance Company, | * | |
| | * | |
| Defendant/Appellee, | * | |

_____

Submitted: June 15, 2010
Filed: August 10, 2010

_____

Before RILEY, Chief Judge, CLEVENGER[1] and COLLOTON, Circuit Judges.

_____

RILEY, Chief Judge.

Dr. Antoine Khoury sought and obtained residual disability benefits from ReliaStar Life Insurance Company (ReliaStar), his employer's long-term disability provider. After ReliaStar approved Dr. Khoury's claim, the parties began to dispute the amount of benefits to which Dr. Khoury was entitled. Dr. Khoury exhausted his

_____

[1]The Honorable Raymond C. Clevenger III, United States Circuit Judge for the Federal Circuit, sitting by designation.

administrative remedies and filed an action in the United States District Court for the District of Minnesota claiming ReliaStar's actions violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq. The district court[2] granted ReliaStar's motion for summary judgment, and Dr. Khoury appeals. We affirm.

## I.    BACKGROUND

Dr. Khoury, a cardiologist employed by Group Health Plan, Inc. (Group Health),[3] was injured at work and suffered a partial disability. Group Health submitted a claim to ReliaStar, its long-term disability insurer. ReliaStar approved the claim and agreed to pay Dr. Khoury benefits.

Under the long-term disability insurance policy, ReliaStar agreed to pay residual disability benefits to a covered person who is "able to perform at least one of the essential duties of [his] regular occupation on a full-time or part-time basis but . . . [is] unable to perform all of the essential duties of [his] regular occupation on a full-time basis," and is "unable to earn more than 70% of [his] basic monthly earnings." The policy set forth a formula for determining the amount of residual benefits to be provided, using the employee's "Basic Monthly Earnings" as a starting point. The policy defined the term "Basic Monthly Earnings" as an employee's "monthly salary or wage on the day before the date [he] became disabled including commissions, bonuses, and contributions to a 401K Plan or Section 125 Plan." An employee's basic monthly earnings "do[] not include overtime pay." Under the terms of the insurance policy, "ReliaStar . . . has final discretionary authority to determine

---

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

[3]Khoury stipulated in the district court to the dismissal of Group Health from this case.

all questions of eligibility and status and to interpret and construe the terms of [the policy] of insurance."

Dr. Khoury's compensation agreement was set forth in his employment contract with Group Health. Under the terms of the contract, Dr. Khoury received "Base Department Compensation" in an amount of $500,000 per year. In order to receive this amount of base compensation, Dr. Khoury was required to participate fully in the "Equal Call Schedule." Doctors participating in the "Equal Call Schedule" were expected to be on-call one weekend every six weeks and two weekdays per month. Doctors who were on-call additional days, beyond those set forth in the "Equal Call Schedule," would be paid $2,500 per day. The amount of money Dr. Khoury actually earned from being on-call on days beyond those required under the "Equal Call Schedule" varied from year to year. In 2003, Dr. Khoury's additional pay was $92,500. In 2004, Dr. Khoury earned an additional $77,500.

After ReliaStar approved Dr. Khoury's request for benefits, Dr. Khoury questioned how ReliaStar determined the amount of benefits to be paid. Dr. Khoury asserted he was required to work additional days on-call, and as a result, ReliaStar should use his total annual income of $580,000 as a starting point to calculate his "basic monthly earnings." To support Dr. Khoury's position, Group Health sent ReliaStar a seven-page facsimile, consisting of one cover page; one page of copied emails from Group Health's manager of physician services and the manager responsible for the physician's pay program (first email or missing email); and five pages of Dr. Khoury's employment contract.

ReliaStar responded by explaining Dr. Khoury's basic monthly earnings did not include the additional amounts he earned for being on-call, but instead, Dr. Khoury's basic monthly earnings would be determined by using his "Base Department Compensation," which was $500,000 per year. ReliaStar also informed Dr. Khoury that he had the right to appeal its decision.

Dr. Khoury appealed ReliaStar's decision, claiming "his base salary [was] $580,000," and attaching an email from Group Health in support of his position (second email). A Regions Hospital vice president stated in the second email that Dr. Khoury's "base pay plus call[,] both of which were required by the [cardiology] department," should be used in calculating his disability benefits.

ReliaStar's appeals committee considered the appeal and requested Dr. Khoury's entire employment contract. After the appeals committee obtained and reviewed Dr. Khoury's entire employment contract, it denied the appeal, stating:

> Although Dr. Khoury may have been required to perform [additional] [c]all shifts due to staffing issues, he received extra pay for the additional [on-c]all shifts worked over and above his $500,000 base pay. Extra pay received for extra time worked is generally considered "overtime" and is certainly considered "overtime" by the insurance industry. It doesn't matter whether this additional [on-c]all time was required by Dr. Khoury's employer as the fact remains that he received extra pay over and above his base salary for the extra hours worked which is consistent with the industry definition of overtime.

"Based on a thorough review of Dr. Khoury's entire claim file, and taking into consideration the policy language," the committee "uph[e]ld the claim department's determination that Dr. Khoury's" basic monthly earnings should be calculated using Dr. Khoury's $500,000 annual base pay. The committee notified Dr. Khoury of his right to file a suit under ERISA.

Dr. Khoury filed suit in Minnesota state court, alleging, as relevant here, ReliaStar denied Dr. Khoury disability benefits in breach of a fiduciary duty. ReliaStar removed the action to the United States District Court for the District of Minnesota, and moved for summary judgment. Dr. Khoury opposed the motion for summary judgment, arguing ReliaStar had a conflict of interest, and the ReliaStar employee who made the initial determination to use the $500,000 figure, instead of

$580,000, to calculate Dr. Khoury's benefits, engaged in malfeasance by excluding the first email in support of Dr. Khoury's position from the administrative record.

The district court first considered "whether Relia[S]tar reasonably concluded that money earned for additional-call time should be omitted from [Dr.] Khoury's 'Basic Monthly Earnings.'" The district court found ReliaStar's interpretation of the language in the insurance policy and the employment contract was reasonable. The district court then considered Dr. Khoury's claims, and found, although Dr. Khoury cited cases discussing the conflict-of-interest issue in ERISA cases, Dr. Khoury failed to explain how any conflict applies in this case. The district court recognized the matter of the missing email, and noted there was "no evidence in the record indicating that the 'disappearance' of this e-mail was anything other than a clerical error." The district court found Dr. Khoury's argument was largely irrelevant because "Relia[S]tar's initial claim decision . . . is not at issue here. Rather, the decision before this Court is Relia[S]tar's denial of [Dr.] Khoury's appeal, *i.e.*, Relia[S]tar's *final* decision." The district court then held, "even if [Dr. Khoury] were correct that the e-mail went 'missing' for nefarious reasons, the Court's analysis would not change," and granted ReliaStar's motion for summary judgment.[4]

---

[4]Courts have struggled with the use of summary judgment to dispose of ERISA cases. Cf. Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 619 (6th Cir. 1998) (Gilman, J., concurring in the judgment and delivering the opinion of the court on the summary judgment issue). We decline to decide the propriety of the use of summary judgment procedures in this case because the issue was not raised by the parties. See also id. (finding, when the district court concurs with the administrator "no harm is done by entering summary judgment in favor of the administrator," however, "[i]f . . . a district court rejects the ruling of the administrator, the district court would then have to independently weigh the evidence in the administrative record and render *de novo* factual determinations," contrary to the summary judgment standard of review); Wages v. Sandler O'Neill & Partners, L.P., 37 F. App'x 108, 111 n.2 (6th Cir. 2002) ("As long as the district court applied the proper standard of review . . . 'reliance on summary judgment standards does not warrant reversal . . . .'" (quoting Univ. Hosp. of Cleveland v. Emerson Elec. Co., 202 F.3d 839, 845 n.2 (6th

Dr. Khoury appeals the district court's judgment, claiming the district court: (1) made inferences and found disputed facts against Dr. Khoury, the non-moving party; (2) did not give sufficient weight to ReliaStar's conflict of interest; and (3) erred in finding ReliaStar's interpretation of the insurance contract was reasonable.

## II.  DISCUSSION
### A.  Standards of Review

"We review a district court's grant of summary judgment de novo." Duffy v. McPhillips, 276 F.3d 988, 991 (8th Cir. 2002).  "Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Anderson v. Larson, 327 F.3d 762, 767 (8th Cir. 2003) (quoting Duffy, 276 F.3d at 991); see Fed. R. Civ. P. 56(c)(2).  The evidence presented, and all reasonable inferences which may be drawn from the evidence must be viewed in the light most favorable to the nonmoving party. See Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The moving party bears the burden of showing there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288 (1968)) (internal marks omitted).

When an ERISA plan grants the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," courts review the administrator's benefit decisions for an abuse of that discretion. Firestone Tire &

Cir. 2000))).

Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "This highly deferential standard reflects the fact that courts are hesitant to interfere with the administration of [an ERISA] plan." Maune v. Int'l Bhd. of Elec. Workers, Local No. 1 Health & Welfare Fund, 83 F.3d 959, 962-63 (8th Cir. 1996) (quoting Cox v. Mid-Am. Dairymen, Inc., 13 F.3d 272, 274 (8th Cir. 1993)) (internal marks omitted). "Thus, we will uphold the [administrator's] decision to deny benefits if it is reasonable." Id. at 963. "We measure reasonableness by whether substantial evidence exists to support the decision, meaning 'more than a scintilla but less than a preponderance.'" Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 583 (8th Cir. 2008) (quoting Woo v. Deluxe Corp., 144 F.3d 1157, 1162 (8th Cir. 1998), abrogated on other grounds by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008)). Courts reviewing a plan administrator's decision to deny benefits will review only the final claims decision, Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770-71 (8th Cir. 2001), and not the "initial, often succinct denial letters," in order to ensure the development of a complete record, Wert v. Liberty Life Assur. Co. of Boston, 447 F.3d 1060, 1066 (8th Cir. 2006).

### B.     District Court's Inferences and Findings of Fact

Dr. Khoury argues the district court, in considering ReliaStar's motion for summary judgment, made inferences and findings of fact in the light most favorable to ReliaStar, contrary to the required standard of review. In particular, Dr. Khoury claims the district court made findings of fact against him regarding what happened to the missing email. Dr. Khoury's argument is not supported by the record. The district court determined, "even if [Dr. Khoury] were correct that the e-mail went 'missing' for nefarious reasons, the Court's analysis would not change." Thus, the district court decided ReliaStar's interpretation of the relevant contract provisions was reasonable, even assuming all of Dr. Khoury's allegations of malfeasance were true.

Next, Dr. Khoury attacks the district court's finding that the missing email was irrelevant because the appeals committee was in possession of a second email which provided substantially the same information as the first email. Dr. Khoury alleges the

author of the second email was "not directly in the pay chain for Dr. Khoury," and the explanations of the emails were not the same. Although Dr. Khoury asserts the author of the second email was not "directly in the pay chain," he has not presented any argument as to why the appeals committee would have given greater weight to someone in Dr. Khoury's pay chain than to the person he refers to as the "Vice President of Operations at Regions Hospital." We decline to accept Dr. Khoury's invitation to find a material issue of fact where there is none. See Anderson, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Further, both the first email and the second email essentially contained the same argument[5]—Dr. Khoury's additional on-call duties were required, and not optional, and therefore, the additional pay for on-call time should be included in the calculation of basic monthly earnings. As a result, the district court did not err in finding the appeals committee "had before it the very same information that [Dr.] Khoury now contends Relia[S]tar intentionally hid."

### C.    Conflict of Interest

It is undisputed by the parties that "ReliaStar . . . has final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of [the policy] of insurance." We therefore review the administrator's eligibility determination for an abuse of discretion. See Glenn, 554 U.S. at ___, 128 S. Ct. at 2350; Wakkinen, 531 F.3d at 580-81. The Supreme Court has held, "for ERISA purposes a conflict exists" when the "plan administrator both evaluates claims for benefits and pays benefits claims." Glenn, 554 U.S. at ___, 128

---

[5]Although the first email contained more information, Dr. Khoury's counsel at oral argument acknowledged the two emails set forth the same position. The first email described some uncertainty, stating, "We have batted around the questions of 'additional call' pay for quite some time." A telephone call to ReliaStar also conveyed Group Health's position, but the record does not reflect the content of the call.

S. Ct. at 2348-49. Dr. Khoury argues the district court gave insufficient weight to this conflict of interest when it considered whether the plan administrator abused its discretion by denying Dr. Khoury an increase in benefits. Dr. Khoury points to the missing email as evidence of the conflict of interest.

In Glenn, the Supreme Court clarified that the existence of a conflict of interest is "one factor among many that a reviewing judge must take into account" when determining whether a plan administrator has abused its discretion in denying benefits. Id. at 2351. The Court acknowledged the existence of a conflict should be weighed more heavily "where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." Id. The conflict should be given less weight "(perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits." Id.

Aside from the history of the claim at issue here, the record contains no evidence of ReliaStar's claims administration history or its efforts "to reduce potential bias and to promote accuracy." Id. Thus, the district court was required to give the conflict some weight, but the existence of the conflict alone is not determinative. Cf. id. at 2351-52. As recognized by the district court, Dr. Khoury was unable to state how the existence of a conflict of interest impacted the claims decision. The district court observed, even if the initial claims processor had maliciously destroyed the missing email, the appeals committee was in possession of a second email containing substantially the same information. Even if each of Dr. Khoury's allegations are true, neither the existence of the conflict alone, nor the intentional destruction of the email, on this record, impacted the ultimate determination of the appeals committee. Cf. id.

at 2351-52. We conclude the district court properly considered the existence of the conflict of interest.

### D.    Reasonableness of ReliaStar's Decision

Lastly, Dr. Khoury argues the district court erred in finding ReliaStar's interpretation of the relevant contract provisions was reasonable because there was no evidence the additional call pay was overtime. "Under the abuse of discretion standard, this court must defer to [ReliaStar's] interpretation of the plan so long as it is 'reasonable,' even if the court would interpret the language differently as an original matter." Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 935 (8th Cir. 2010). In Finley v. Special Agents Mut. Benefit Assoc., Inc., 957 F.2d 617, 621 (8th Cir. 1992), this court set forth five-factors to assist courts in determining whether a plan administrator's interpretation of a policy is reasonable. Under this Finley test, we determine whether the plan administrator's interpretation (1) is consistent with the plan's goals; (2) renders any of the plan language meaningless or internally inconsistent; (3) conflicts with the substantive or procedural requirements of ERISA; (4) has been followed similarly in the past; and (5) is contrary to the clear language of the policy. See id.

The district court considered each of the Finley factors, and found they supported ReliaStar's decision. Dr. Khoury argued, both before the district court and on appeal, that ReliaStar improperly interpreted the term "overtime," which was left undefined in the policy. ReliaStar's appeals committee found:

> Although Dr. Khoury may have been required to perform [additional on-call] shifts due to staffing issues, he received extra pay for the additional [on-call] shifts worked over and above his $500,000 base pay. Extra pay received for extra time worked is generally considered "overtime" and is certainly considered "overtime" by the insurance industry.

-10-

The appeals committee determined the additional call pay was overtime, and as such, could not be included in the calculation of Dr. Khoury's "Basic Monthly Earnings" for purposes of his benefits calculation.  Dr. Khoury contends his additional on-call time is not overtime.

The district court accurately recognized "[r]ecourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary."  Id. at 622 (quoting Central States v. Indep. Fruit & Produce Co., 919 F.2d 1343, 1350 (8th Cir. 1990)). The district court set forth the dictionary definition of the term "overtime," and found ReliaStar employed such a definition when it denied Dr. Khoury's appeal.  We agree with the district court that the appeals committee, in finding "[e]xtra pay received for extra time worked is generally considered 'overtime,'" applied a reasonable, dictionary definition of the term which does not conflict with the clear language of the policy.  See, e.g., Black's Law Dictionary 1137 (8th ed. 2004) (defining "overtime" as "[t]he extra wages paid for excess hours worked").  We agree with the district court's finding that ReliaStar's interpretation of the insurance plan was reasonable. See Hutchins v. Champion Int'l Corp., 110 F.3d 1341, 1344 (8th Cir. 1997) ("Under an abuse of discretion standard we do not search for the best or preferable interpretation of a plan term: it is sufficient if the [administrator's] interpretation is consistent with a commonly accepted definition.").

## III.    CONCLUSION

We affirm the judgment of the district court.

_____

-11-