BRIGHT, Circuit Judge,
dissenting.
While I agree with my colleagues that the district court abused its discretion in awarding attorneys’ fees to Sullivan, I would affirm that portion of the district court’s decision awarding benefits to Sullivan.
The main question in this case is whether Unum’s decision to characterize the large payments to Sullivan in 2004 as payments from the prior sale of a business is supported by substantial evidence in the record (more than a scintilla, but less than a preponderance). See Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 583 (8th Cir.2008) (holding substantial evidence supported determination to deny benefits on the basis that the participant was not continuously disabled throughout the 180-day elimination period).
In making their determination, Unum cites Sullivan’s changing positions regarding the characterization of the large payments and relies heavily on Sullivan’s submissions to the Social Security Administration (“SSA”). Sullivan initially told the SSA that the large payments he received were payments for the sale of a business and not compensation for his work. Sullivan noted his “monthly salaries were between $720 and $800 ... allowing him to continue receiving [SSA disability] payments.” In the amortization schedule provided to the SSA, the total amount of the payments made to Sullivan each year matches the amounts of large payments listed as “for prior services” in the ledgers provided by Holmquist, though with some discrepancy in the dates of the payments. In his March 2009 interview "with Unum, Sullivan also stated the large increase in his 2003 income was partly based on the sale of the business to IHPC and that IHPC still owed him $36,064 on the sale. Sullivan now claims the large payments should properly be considered a bonus.
Sullivan’s explanation to Unum of when and how IHPC made payments for the prior sale of the business does not square with the record. Sullivan submitted a letter from his Certified Public Account (“CPA”) stating no payments were made on the sale of the business until, 2008. The letter directly contradicts the statement Sullivan made to the Unum representative in 2009 about the increase in his 2003 income.
However, there is substantial evidence in the record supporting Sullivan’s position. First, Sullivan withdrew his request for reconsideration to the SSA before the SSA made a 'final determination regarding his disability payments, and he informed Unum of this at the time he provided Unum with a copy of the documents. Sec *1112 ond, a number of the documents Sullivan submitted to Unum consistently treat the large payments to Sullivan as compensation for his work. Sullivan provided IHPC’s federal tax returns from 2001-2004 which reported the full amount the company paid Sullivan during those years as compensation for officers. Sullivan also provided his W-2 forms for 2003 and 2004 listing his income as salary from IHPC. Holmquist’s ledgers also record the full amount paid to Sullivan as officer salary in both an overview sheet of the company’s finances from 2000-2004, and in more detailed tables breaking down Sullivan’s pay from 2004-2006. While the detailed ledgers list the large payments as “for prior services,” Sullivan states that phrase simply means services provided earlier in the year. Sullivan also provided detailed earning statements from 1999-2007. Finally, it strains credibility to believe that the founder and president of IHPC would only be paid $4,440 in semi-monthly payments in a year where the company had sales over $4.4 million.
This case suffers from a lack of documents that provide a satisfactory explanation of how and when IHPC made payments on the $440,000 promissory note. Nonetheless, Sullivan’s withdrawal of his request for reconsideration to the SSA undercuts the prior statements to the SSA that the payments in question were for the sale of a business. The rest of the evidence marshaled by Unum is not substantial enough to overcome the weight of the documents that explicitly treat the large payments to Sullivan as officer compensation. IHPC has consistently considered the payments to Sullivan as salary in its records and tax filings. There is simply insufficient evidence in the record for Unum to have determined otherwise.
As for whether Unum reasonably characterized the $175,000 payments in 2004 as commission and not bonus, I would conclude it did not. The distinction between commission or bonus in the policy determines the time frame used to calculate Sullivan’s benefit. If the payments are a bonus, the time frame includes a $150,000 payment that the commission time frame would exclude. Unum initially characterized the large payments as a commission and continues to support that argument on appeal.
The policy does not define commission or bonus. Under the abuse of discretion standard, this court defers to the administrator’s interpretation of the plan “so long as it is reasonable, even if the court would interpret the language differently as an original matter.” Khoury v. Grp. Health Plan Inc., 615 F.3d 946, 954 (8th Cir.2010) (quotation omitted). Under Finley v. Special Agents Mut. Ben. Ass’n, Inc., 957 F.2d 617, 621 (8th Cir.1992), this court considers whether the plan administrator’s interpretation “(1) is consistent with the plan’s goals; (2) renders any of the plan language meaningless or internally inconsistent; (3) conflicts with the substantive or procedural requirements of ERISA; (4) has been followed similarly in the past; and (5) is contrary to the clear language of the policy.” Khoury, 615 F.3d at 954 (citing Finley, 957 F.2d at 621).
Unum mainly relies on Holmquist’s responses regarding whether Sullivan’s pay was commission or bonus in making their determination to classify Sullivan’s income as commission. However, Holmquist himself was far from clear on how to characterize the payments: “[SullivanJ’s officer salary is inclusive of a commission. The commission could be called a bonus, depending on the definition used.... It is all commission, unless definitions would deem part of it bonus.” Unum also cites to Sullivan’s resume, which notes his salary at IHPC was “$180,000/year, plus commissions.” However, as Unum acknowledges, *1113 Sullivan also referred to the payments at various times as dividend, salary, and commission/bonus. Sullivan also demurred to Holmquist on several occasions with regard to how to characterize his income. Given Sullivan’s lack of knowledge on the issue and the vacillating nature of Holmquist’s answers, it was unreasonable for Unum to have relied on Sullivan’s or Holmquist’s representations in concluding the payments were a commission.
“[W]ords are to be given their plain and ordinary meaning as understood by a reasonable, average person.” Finley, 957 F.2d at 622 (quotation omitted). While acknowledging plan terms should be given their ordinary meaning, Unum does not provide any evidence to support what the ordinary meaning of commission and bonus should be. The district court turned to dictionary definitions to settle the issue. And this court has noted several times in this context, “[Recourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary.” Khoury, 615 F.3d at 955 (quotation omitted).
Webster’s Third New International Dictionary defines “commission” as “a fee paid to an agent or employee for transacting a piece of business or performing a service ... esp.: a percentage of the money received in a sale or other transaction paid to the agent responsible for the business” with the examples of “a broker receives a [commission] on each share of stock bought for a customer” and “a [commission] of 9 percent on each sale.” Webster’s Third New International Dictionary 457 (2002). The Oxford English Dictionary defines “commission” as “[a] remuneration for services or work done as agent, in the form of a percentage on the amount involved in the transactions; a pro rata remuneration to an agent or factor.” 1 The Compact Edition of the Oxford English Dictionary 481 (1984).
Webster’s defines “bonus” as “money or an equivalent given in addition to the usual compensation ... (2): the payment made by the employer under a bonus system” with the example of “surplus profits distributed among the workers as a [bonus].” Webster’s Third New International Dictionary 252 (2002). Another definition is “[m]oney or its equivalent, given as a premium, or as an extra or irregular remuneration, in consideration of offices performed, or to encourage their performance .... ” 1 The Compact Edition of the Oxford English Dictionary 247 (1984).
Sullivan received the vast majority of his salary in one or two large payments each year, partially based on the company’s cash position and liquidity needs at the time. Beyond the loose tie to the company’s annual revenue, the record is completely devoid of any connection between Sullivan’s payments and the type of specific business, sale, or transaction represented by the definitions of “commission.” To fit the ordinary definition of commission, Sullivan would have needed to be paid a percent of each sale or piece of business he was responsible for — not based on the performance of the company as a whole. As president, his duties included much more than sales and marketing. The large payments to Sullivan are more naturally characterized as being made “under a bonus system” in consideration of Sullivan’s performance and to encourage further performance and growth of the company.
Finally, consideration must be afforded to the remaining four Finley factors in reviewing Unum’s interpretation of commission and bonus. Unum’s interpretation is consistent with the plan’s goals insofar as it provides Sullivan with at least some disability benefits. Their interpretation also does not render any of the plan language meaningless or internally inconsistent, nor does it conflict with the require *1114 ments of ERISA. Finally, the record is silent as to how Unum has interpreted the policy provisions relating to commissions and bonuses in the past.[1] While the remaining four Finley factors do not weigh against Unum, they also do not overcome the mischaracterization of the plain and ordinary meanings of commission and bonus. Therefore, Unum was not reasonable in characterizing Sullivan’s payments as a commission.
Unum abused its discretion in determining the large payments to Sullivan were from the sale of a business and not compensation in the form of bonuses. Accordingly, I would affirm the judgment of the district court and award Sullivan benefits.

. We have noted that even “if the interpretation is unreasonable from the beginning, such an interpretation may still be arbitrary and capricious.” Lickteig Bus. Men’s Assurance Co. of Am., 61 F.3d 579, 585 (8th Cir.1995) (quotation omitted).