# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2559

_____

Marc Kutten

*Plaintiff - Appellee*

v.

Sun Life Assurance Company of Canada

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 14, 2014
Filed: July 21, 2014

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Marc Kutten sued Sun Life Assurance Company of Canada, alleging that Sun Life improperly denied him long-term disability benefits under a disability plan governed by the Employee Retirement Income Security Act of 1974 (ERISA). Sun Life and Kutten filed cross-motions for summary judgment. The district court denied Sun Life's motion for summary judgment and granted Kutten's motion. We reverse.

I.

Kutten was the president and a co-owner of Property Solutions Group LLC. In 1994, Kutten was diagnosed with retinitis pigmentosa, a progressive eye disease that can eventually lead to blindness. At his doctor's direction and under his doctor's supervision, Kutten took 15,000 units a day of a non-prescribed, over-the-counter vitamin A palmitate supplement. J.A. 431. The National Eye Institute supported Kutten's course of treatment, and, though his vitamin A supplements could not cure his retinitis pigmentosa, they could slow the disease's rate of progression.

Prior to June 2010, Property Solutions Group offered a group disability benefit plan through Aetna. The Aetna plan offered maximum gross benefits of $1,000 a month. Effective June 1, 2010, Property Solutions Group purchased a new policy with Sun Life. The Sun Life Plan (the Plan) offered maximum gross benefits of $6,000 a month. The Plan also included an exclusion for pre-existing conditions:

> No LTD benefit will be payable for any Total or Partial Disability that is due to:
>
> . . .
>
> 6. a Pre-Existing Condition.
>
> **Pre-Existing Condition** means during the 3 months prior to the Employee's Effective Date of Insurance the Employee received medical treatment, care or services, including diagnostic measures, or took prescribed drugs or medicines for the disabling condition.[1]

J.A. 133. If Sun Life determined that an employee had a pre-existing condition according to the Pre-Existing Condition clause, then the employee was not entitled

---

[1]A similar clause excluded coverage for any "increases in amounts of insurance." J.A. 133.

to the benefits under the Plan.  The employee was still entitled, however, to the same level of benefits available to the employee under the Aetna plan.  J.A. 134.

On September 21, 2010, Kutten's eye condition forced him to stop working. He applied for long-term disability benefits under the Plan on October 6, 2010.  After initially denying Kutten's claim, Sun Life concluded on appeal that Kutten was "Totally Disabled."  Nevertheless, Sun Life determined that Kutten was not entitled to the increased amount of $6,000 a month under the Plan because his retinitis pigmentosa constituted a pre-existing condition.  According to Sun Life, Kutten's daily use of vitamin A supplements at his doctor's direction qualified as a "medical treatment."  Because Kutten received his "medical treatment" during the three-month period prior to the Plan's effective date, the Pre-Existing Condition clause barred full benefits.

Kutten filed suit in February 2012.  Kutten and Sun Life filed cross-motions for summary judgment.  The district court granted Kutten's motion for summary judgment, finding that Sun Life abused its discretion in construing the Pre-Existing Condition clause to apply to Kutten's taking of supplements.  According to the court, Sun Life's broad interpretation of the phrase "medical treatment" was contrary to the Plan's plain language and rendered portions of the clause meaningless and internally inconsistent.  Sun Life appealed.

## II.

The parties agree that the Plan grants Sun Life discretionary authority to construe its terms.  We therefore review Sun Life's decision for abuse of discretion. See King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc).  Applying the abuse-of-discretion standard, an "administrator's interpretation of uncertain terms in a plan 'will not be disturbed if reasonable.'"  Id. at 999 (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989)).  In Finley v. Special Agents Mut. Ben. Ass'n, 957 F.2d 617, 621 (8th Cir. 1992), our court

developed factors to assess the reasonableness of an administrator's decision. Under Finley, we consider whether the "administrator's interpretation (1) is consistent with the plan's goals; (2) renders any of the plan language meaningless or internally inconsistent; (3) conflicts with the substantive or procedural requirements of ERISA; (4) has been followed similarly in the past; and (5) is contrary to the clear language of the policy." Khoury v. Grp. Health Plan, Inc., 615 F.3d 946, 954 (8th Cir. 2010) (citing Finley, 957 F.2d at 621). Though these factors "inform our analysis," "'[t]he dispositive principle remains . . . that where plan fiduciaries have offered a "reasonable interpretation" of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an "abuse of discretion" the challenged benefits determination.'" King, 414 F.3d at 999 (alterations in original) (quoting de Nobel v. Vitro Corp., 885 F.2d 1180, 1188 (4th Cir. 1989)).

This case turns on a narrow question. Was it reasonable for Sun Life to conclude that Kutten's vitamin A supplements constituted a "medical treatment"? The parties focus their attention on Finley factors two and five: whether the administrator's interpretation renders language meaningless or internally inconsistent and whether the interpretation is contrary to clear language of the policy. Because these inquiries are closely related in this case, we will analyze them together.

Kutten urges us to adopt the district court's rationale, that because the Pre-Existing Condition clause separates "medical treatment" from "prescribed drugs or medicines" with the conjunction "or," Sun Life intended to exclude all "drugs or medicines" from the phrase "medical treatment." Kutten argues if "prescribed drugs or medicines" are excluded from the phrase "medical treatment," then vitamin A supplements must be excluded from the phrase as well because vitamin supplements require even less medical intervention than "prescribed drugs or medicines." To construe the phrase "medical treatment" to include vitamin supplements but exclude "prescribed drugs or medicines" would create an internal inconsistency in the Pre-

Existing Condition clause, and to construe the phrase "medical treatment" as broad enough to encompass both "prescribed drugs or medicines" and vitamin supplements would render the phrase "prescribed drugs or medicines" meaningless.

We decline to adopt Kutten's rigid construction of the Pre-Existing Condition clause. In Smith v. United Television, Inc. Special Severance Plan, 474 F.3d 1033 (8th Cir. 2007), our court refused to "mechanically interpret" every "or" contained in an ERISA plan as disjunctive and instead opted to "interpret the word 'or' according to context." Id. at 1037 (internal quotation marks omitted). In a similar manner, we cannot construe the Pre-Existing Condition clause to require all "prescribed drugs or medicines" to fall outside of the phrase "medical treatment." Drawing a sharp distinction between "prescribed drugs or medicines" and "medical treatment" is a virtually impossible task because "prescribed drugs or medicines," as the words are commonly understood, are forms of "medical treatment." A doctor's given treatment plan may simultaneously qualify as both. Extending Kutten's proposed interpretive method—that every term in the Pre-Existing Condition clause must be given a distinct meaning—to the entire clause would require us to give distinct meanings to "treatment," "care," and "services" as well as to "drugs" and "medicines." Focusing on such semantics misses the larger purpose of the clause. These terms define and clarify what constitutes a "Pre-Existing Condition" by casting a broad net over potential types of medical intervention. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 407 n.4 (2d Cir. 2009) (Sack, J., concurring) (reasoning that the "itemization of terms" in a list "may reflect an intent to occupy a field of meaning, not to separate it into differentiated parts" and concluding that the "rule against surplusage" should be "applied with a grain or two of salt when examining a list of words having similar or even overlapping meaning").

Our search is not for the "best or preferable interpretation" of the Pre-Existing Condition clause's terms. Hutchins v. Champion Int'l Corp., 110 F.3d 1341, 1344 (8th Cir. 1997). An interpretation of a term is reasonable if the interpretation

conforms with ordinary meaning, which can be derived from "the dictionary definition of the word and the context in which it is used." Id.; see Khoury, 615 F.3d at 955 (""[R]ecourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary.'" (quoting Finely, 957 F.2d at 622)). *Webster's Third New International Dictionary* defines "Medical" as, "of, relating to, or concerned . . . with the practice of medicine." Webster's Third New International Dictionary 1402 (3d ed. 2002). "Medicine," as used in the definition of "medical," is defined as "the science and art dealing with the maintenance of health and the prevention, alleviation, or cure of disease," and "medicine," as a substance, is defined as "a substance or preparation used in treating disease." Id. Treatment is defined as "the action or manner of treating a patient medically or surgically," and to "treat" is "to care for (as a patient or part of the body) medically." Id. at 2435. These definitions support the conclusion that the ordinary meaning of the phrase "medical treatment" would encompass Kutten's vitamin A supplements. The supplements are "medical" in the sense that they prevented or alleviated the progression of Kutten's retinitis pigmentosa. Further, Kutten's daily supplement regimen constituted a "treatment" because it was the "manner," in fact the only manner, by which Kutten could "care for" his condition. Thus, each day he continued his doctor-recommended regimen, he received medical treatment.

Kutten attempts to portray Sun Life's interpretation of the Pre-Existing Condition clause as absurd by analogizing his vitamin regimen to other common, self-administered and seemingly mild forms of personal healthcare such as applying suntan lotion or eating a high-fiber diet. These analogies, however, are flawed. The controversy's context and the clause's purpose enlighten our assessment of Sun Life's interpretation. See Hutchins, 110 F.3d at 1344. Kutten had a known, debilitating disease for which he undertook the only treatment plan he could, at his doctor's direction. Though the Pre-Existing Condition clause's literal language may not neatly fit Kutten's course of treatment, no one disputes that Kutten had the disease and treated it during the relevant time period. Kutten's analogies fail because they do not

account for the fact that his treatments were in response to his retinitis pigmentosa, a disease that otherwise qualified him for long-term disability benefits. It is reasonable to conclude Sun Life designed the Pre-Existing Condition clause to exclude coverage in circumstances similar to this case, where a substantial increase in coverage coincided with a claim for long-term disability. In this sense, Sun Life's interpretation is consistent with the broader goals of the Plan, supporting Finley factor one. See Cash v. Wal-Mart Grp. Health Plan, 107 F.3d 637, 643 (8th Cir. 1997). As to the remaining factors, factors three and four, we have no indication that Sun Life's interpretation contravenes ERISA's requirements or that Sun Life has taken inconsistent positions in the past.

With the benefit of hindsight, Sun Life could have drafted the Pre-Existing Condition clause to more clearly cover Kutten's supplement regimen. We return, however, to the "dispositive principle" governing our abuse-of-discretion review: "'[W]here plan fiduciaries have offered a 'reasonable interpretation' of disputed provisions, courts may not replace [it] with an interpretation of their own.'" See King, 414 F.3d at 999 (second alteration in original) (quoting de Nobel, 885 F.2d at 1188). In light of an ordinary understanding of what constitutes a "medical treatment" and the purpose of the Pre-Existing Condition clause, we hold that Sun Life did not abuse its discretion in denying Kutten's claim for benefits under the Plan.

III.

For the reasons stated, we reverse the district court's entry of summary judgment and remand for the district court to enter summary judgment in favor of Sun Life.

BYE, Circuit Judge, dissenting.

I believe the district court properly concluded Sun Life abused its discretion in denying Kutten long-term disability benefits. It was unreasonable for Sun Life to

conclude the use of a vitamin supplement constituted medical treatment. I therefore respectfully dissent from the decision reversing the district court.

In my view, this is a simple case of an insurer issuing a poorly-drafted policy and then going to significant lengths to evade its terms. My major concern is with the expansive definition of the term "medical treatment" which the majority permits. To me, the use of a vitamin supplement does not constitute medical treatment. While the use of prescribed drugs and medicines generally require that a person have interacted with a medical professional, the use of vitamin supplements requires no such medical intervention as they are available over the counter and without a prescription. Under Sun Life's expansive interpretation, it is hard to imagine a scenario which would not be covered by its Pre-Existing Condition clause. Any time a medical official gave advice it would be considered medical treatment under Sun Life's interpretation. Even simple things such as getting eight hours of sleep a night, brushing one's teeth, exercising thirty minutes a day, or taking an aspirin for a headache would be encompassed by this interpretation.

The majority acknowledges "Sun Life could have drafted [its policy] to more clearly cover Kutten's supplement regimen," and the policy's "literal language may not neatly fit Kutten's course of treatment." It is for precisely these reasons the district court properly concluded Sun Life abused its discretion in denying Kutten's claim. The Pre-Existing Condition clause's language simply does not cover the use of a vitamin supplement. Of course, in hindsight, Sun Life may wish it had drafted the Pre-Existing Condition clause in a different manner so it would apply to conditions such as Kutten's retinitis pigmentosa, but the clause's language cannot be construed to apply here.

The flaw in the majority's reasoning as contained is its decision is to essentially ignore the policy language and, instead, apply its own definition of what should be included within the Pre-Existing Condition clause. Intuitively, it may seem Kutten's

retinitis pigmentosa should fall within the ordinary definition of a pre-existing condition. Indeed, I agree Kutten had a "pre-existing condition" in the ordinary definition of that term. Nonetheless, Kutten did not have a "Pre-Existing Condition" as defined by Sun Life's policy, and such is the critical distinction Sun Life and the majority have failed to make. We are not free to use the ordinary definition. Instead, we must apply the specific language of Sun Life's policy. For future policies, Sun Life is free to revise its policy language to more clearly exclude conditions such as retinitis pigmentosa, but in this case it should be bound by the bargain it entered into with Kutten.

The majority notes, "[w]ith the benefit of hindsight, Sun Life could have drafted the Pre-Existing Condition clause to more clearly cover Kutten's supplement regimen." Yet, hindsight is unnecessary when Sun Life can simply rely on a federal court to retroactively fix its poorly-drafted policies. It is not this Court's prerogative to assist a plan administrator in evading its own poorly-chosen policy language. Instead, our responsibility is to confirm that the plan administrator interprets its policies in a reasonable manner. Because I view Sun Life's expansive interpretation of medical treatment as unreasonable, I respectfully dissent.

———————————————