# United States Court of Appeals

## For the Eighth Circuit

———————————————

No. 25-2860

———————————————

Charles M. Kleinsteuber

*Plaintiff - Appellant*

v.

Metropolitan Life Insurance Company

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota

——————————

Submitted: March 17, 2026
Filed: May 29, 2026

——————————

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

——————————

GRASZ, Circuit Judge.

After Dana Kleinsteuber died, her husband, Charles Kleinsteuber, made a claim for accidental death and dismemberment (AD&D) benefits under an Employee Retirement Income Security Act (ERISA) plan, which was administered and insured by the Metropolitan Life Insurance Company (MetLife). MetLife denied coverage, explaining an exclusion applied because the home dialysis Mrs. Kleinsteuber used to treat her end-stage renal disease (ESRD) caused or contributed to her death. Mr.

Kleinsteuber filed this lawsuit pursuant to ERISA, asking the district court[1] to reverse MetLife's denial. The parties filed cross motions for summary judgment, and the district court entered judgment in MetLife's favor. Mr. Kleinsteuber appeals, and we affirm.

## I. Background

Mrs. Kleinsteuber began struggling with an eating disorder as a teenager, and she ultimately developed ESRD as a result. She began using home dialysis to treat her ESRD in December 2021.

On January 18, 2022, Mrs. Kleinsteuber started a round of home dialysis mid-morning. She spoke with Mr. Kleinsteuber on the phone at 11:25 a.m. and mentioned her dialysis was almost finished. When he arrived home at 11:55 a.m., he found her lying on the ground covered in blood. She was disoriented but said, "I think I may have killed myself," and "do not let me die." Mr. Kleinsteuber called 911 at 11:59 a.m. When first responders arrived at 12:23 p.m., they quickly realized that Mrs. Kleinsteuber was still losing blood because she had not closed the chest port she used to administer dialysis. They closed her port, and her blood loss immediately stopped. Around this time, however, Mrs. Kleinsteuber went into cardiac arrest due to her severe blood loss. The first responders attempted various lifesaving measures, but she died at 1:08 p.m.

Mr. Kleinsteuber submitted a claim for AD&D benefits under his employer's ERISA plan, which MetLife administers, after Mrs. Kleinsteuber died. The plan provides AD&D coverage when an enrollee or their spouse "sustain[s] an accidental injury that is the Direct and Sole Cause of a Covered Loss," including a "[l]oss of life." But the plan excludes this coverage "for any loss caused or contributed to by . . . physical or mental illness or infirmity, or the diagnosis or treatment of such

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

illness or infirmity." It also grants MetLife "discretionary authority to interpret [its] terms . . . and to determine eligibility for and entitlement to [p]lan benefits in accordance with the terms of the [p]lan."

MetLife initially declined to review Mr. Kleinsteuber's claim because Mrs. Kleinsteuber's death certificate states she died from her ESRD and "natural causes." MetLife agreed to review the claim at Mr. Kleinsteuber's insistence, however, and determined that AD&D benefits were not payable. It sent Mr. Kleinsteuber an initial denial letter explaining his claim was not covered because Mrs. Kleinsteuber's death resulted from natural causes, rather than an accident, and that the exclusion applied since her death was "caused or contributed to by" her ESRD or home dialysis. In response, Mr. Kleinsteuber lodged an administrative appeal spanning more than 1,000 pages, including a letter from Mrs. Kleinsteuber's doctor, various reports, photographs, and medical records.

The claim examiner assigned to Mr. Kleinsteuber's claim discussed his appeal with MetLife's appeals committee, and the committee upheld MetLife's denial based on the exclusion. MetLife sent Mr. Kleinsteuber a second, final denial letter explaining the reasons for its decision and noting it had "re-examined the entire claim file," including all the additional evidence Mr. Kleinsteuber submitted. Notably, MetLife conceded Mrs. Kleinsteuber's death was accidental based on the letter Mr. Kleinsteuber submitted from Mrs. Kleinsteuber's doctor. But it maintained that the exclusion applied since Mrs. Kleinsteuber's home dialysis, which she used to treat her ESRD, "caused or contributed" to her death. As MetLife put it,

> [h]ad Mrs. Kleinsteuber not been receiving dialysis to treat her [ESRD] she would not have had a port line. Additionally, she would not have been interacting with a dialysis machine. Without the dialysis machine and port line the death of Mrs. Kleinsteuber as it occurred would not have been possible. Therefore, the treatment of her [ESRD] by means of dialysis caused/contributed to her death as it exposed her to the specific circumstances necessary for her to pass away as she did.

. . . [A]s the passing was caused/contributed to by [Mrs. Kleinsteuber]'s treatment of a Physical Illness or Infirmity the exclusion . . . is applicable and no [AD&D] benefits are payable.

To support its conclusion, MetLife cited the letter from Mrs. Kleinsteuber's doctor and reports from the sheriff's and medical examiner's offices, which also recount statements from Mr. and Mrs. Kleinsteuber.

Mr. Kleinsteuber filed this case under ERISA after exhausting his administrative appeals, asking the district court to reverse MetLife's denial of his claim. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) ("[ERISA] permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." (citing 29 U.S.C. § 1132(a)(1)(B))). MetLife answered, and the parties filed cross motions for summary judgment based on the administrative record. The district court granted MetLife's motion and denied Mr. Kleinsteuber's. Mr. Kleinsteuber appeals.

## II. Analysis

Mr. Kleinsteuber raises four issues on appeal: (1) whether MetLife conducted a full and fair review of his claim; (2) whether the district court gave MetLife's conflict of interest sufficient weight; (3) whether MetLife's interpretation of the plan exclusion was reasonable; and (4) whether MetLife supported its denial with substantial evidence. We begin by analyzing his first and second issues because they could impact the standard of review we must apply to his third and fourth issues. *Compare Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 986–87 (8th Cir. 2014) ("[I]f the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan," as is the case here, "the . . . court reviews a plan administrator's denial of ERISA benefits for an abuse of discretion." (cleaned up)), *with Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033, 1035 & n.1 (8th Cir. 2007) (holding the administrator's decision "may be subject to de novo review when the administrator

operates under a conflict of interest or implements flawed procedures," even if the plan grants it discretion).

## A. Full and Fair Review

Under ERISA, "every employee benefit plan shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . . ." 29 U.S.C. § 1133(2). The regulations promulgated under ERISA "establish extensive requirements to ensure" that plan administrators provide such a review. *Aetna Health Inc. v. Davilla*, 542 U.S. 200, 220 (2004). One such regulation states that "the plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination," including "[t]he specific reason or reasons for the adverse determination" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(1)(i), (iii). Mr. Kleinsteuber contends MetLife's initial denial letter failed to comply with both requirements.

As a preliminary matter, Mr. Kleinsteuber should not have zeroed in on MetLife's initial denial letter. We consider all the plan administrator's communications to the insured in deciding whether it satisfied ERISA's notice requirements, not just its initial letter. *See Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1096 (8th Cir. 1992) (holding that two denial letters, when "[c]ombined with the many earlier letters and phone calls between Prudential and Davidson, . . . ensured Davidson had adequate notice of why his claim was denied"). This makes good sense. "[A]dministrative efficiency is a virtue at the initial claim denial stage," so ERISA only requires the plan administrator to "explain[] the basis for the adverse initial decision sufficiently to permit the claimant to prepare an informed request for further review" in its initial denial letter. *Chorosevic v. MetLife Choices*, 600 F.3d 934, 944 (8th Cir. 2010) (cleaned up). If we decided whether plan administrators provided full and fair reviews by looking only at their "initial, often succinct denial letters," we would wind up deciding cases wrongly based on

incomplete records. *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (quoting *Wert v. Liberty Life Assur. Co. of Bos.*, 447 F.3d 1060, 1066 (8th Cir. 2006)).

With this in mind, MetLife's denial letters adequately informed Mr. Kleinsteuber that it denied his claim based on the exclusion because Mrs. Kleinsteuber's home dialysis caused or contributed to her death. For instance, in its initial denial letter, MetLife quoted the exclusion and explicitly stated it applied because Mrs. Kleinsteuber's death "was caused or contributed to by physical or [*sic*] illness or infirmity, or the diagnosis or treatment of such illness or infirmity with respect to Mrs. Kleinsteuber's [ESRD]." And in its final denial letter, MetLife again quoted the exclusion and explained in more detail that it applies "in instances when a loss is caused or contributed to by the treatment of a physical illness or infirmity"; that "[d]ialysis is a treatment for [ESRD]"; and that Mrs. Kleinsteuber's "treatment of her [ESRD] by means of dialysis caused/contributed to her death as it exposed her to the specific circumstances necessary for her to pass away as she did." *See, e.g.*, *Wald v. Sw. Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1007 (8th Cir. 1996) (holding a plan administrator "conducted a full and fair review" where it "clearly explained to [the claimant] that she was denied coverage because the plan specifically excluded" coverage for her claim).

Turning to Mr. Kleinsteuber's second argument, we agree that neither of MetLife's denial letters "provide[d] a description of any additional material or information necessary for [him] to perfect his claim . . . ." But § 2560.503-1(g)(1) only requires plan administrators to provide such a description when additional information might actually allow a claimant to perfect his claim. *See Chorosevic*, 600 F.3d at 944 ("United had to identify and request additional information only if it 'believe[d] that more information [was] needed to make a reasoned decision.'" (alterations in original) (quoting *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997))). MetLife denied Mr. Kleinsteuber's claim based on its application of the exclusion's language to the undisputed facts of this case, rather than on missing information. MetLife therefore had no obligation to provide Mr.

Kleinsteuber with a statement of what evidence he could submit to perfect his claim because none existed. *See id.*

For these reasons, MetLife fully and fairly reviewed Mr. Kleinsteuber's claim.

## B. Conflict of Interest

In cases like this one, where the plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket," we must consider the plan administrator's "inherent conflict of interest . . . as a factor in our" analysis. *Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 538 (8th Cir. 2020). "The weight given the conflict depends on the circumstances of the particular case." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010).

The district court recognized MetLife's conflict and afforded it "minor to moderate weight" because "the record is slim" as to how it impacted MetLife's adjudication of Mr. Kleinsteuber's claim. Mr. Kleinsteuber argues it should have instead given MetLife's conflict "great weight" for ten reasons. But there is a fundamental problem with his position. Even if Mr. Kleinsteuber's arguments suggested MetLife was biased, and in our view, they do not, he did not identify any evidence tying the problems he perceived with its investigation to its decision denying his claim. We therefore agree with the district court that MetLife's conflict should not be given much weight. *See id.* (holding that when there is "little evidence" that the plan administrator's conflict affected its adjudication, the conflict is only entitled to "some weight" and is "not determinative").

Given this, we need not dwell on Mr. Kleinsteuber's arguments, but a few issues warrant separate comment. First, Mr. Kleinsteuber repeatedly complains about MetLife's initial review of his claim and its preliminary conclusions. These arguments miss the mark. "Courts reviewing a plan administrator's decision to deny benefits will review only the final claims decision . . . ." *Khoury*, 615 F.3d at 952.

This is because we cannot say a plan administrator's conflict affected its adjudication of a claim without considering the final decision it made on the complete record. *Id.*

Second, Mr. Kleinsteuber faults MetLife for conceding Mrs. Kleinsteuber's death was accidental, since it initially reached the opposite conclusion. But MetLife only conceded this issue in response to a letter from Mrs. Kleinsteuber's doctor opining that her death was accidental, which Mr. Kleinsteuber first submitted with his administrative appeal. "A plan administrator abuses its discretion when it ignores relevant evidence," so MetLife had no choice but to reevaluate its conclusion that Mrs. Kleinsteuber's death was not accidental after receiving this letter. *Gerhardt v. Liberty Life Assur. Co. of Bos.*, 736 F.3d 777, 780 (8th Cir. 2013) (quoting *Willcox v. Liberty Life Assur. Co. of Bos.*, 552 F.3d 693, 701 (8th Cir. 2009)). "It was not unreasonable for [MetLife] to change its mind based on the additional evidence [Mr. Kleinsteuber] provided . . . ." *Case v. Toshiba Am. Info. Sys., Inc.*, 7 F.3d 771, 774 (8th Cir. 1993).

And third, Mr. Kleinsteuber suggests MetLife needed to expressly address all the arguments and evidence he submitted with his administrative appeal. Not so. ERISA's regulations only require a plan administrator to "take[] into account" the information a claimant submits. § 2560.503-1(h)(2)(iv). They "do[] not require the plan administrator to discuss specific evidence submitted by the claimant." *Midgett v. Washington Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 896 (8th Cir. 2009). MetLife's final denial letter states that it "re-examined the entire claim file, including examination of any additional material and information provided with [Mr. Kleinsteuber's] request for appeal," and there is no contrary evidence in the record.

We therefore agree with the district court that MetLife's conflict should be given little weight.

## C. Interpretation of the Plan Exclusion

Because the plan affords MetLife discretion to construe its terms, and Mr. Kleinsteuber has not shown that any procedural irregularities or MetLife's conflict affected the adjudication of his claim, we would ordinarily review MetLife's interpretation of the exclusion for abuse of discretion. *See Kutten v. Sun Life Assur. Co. of Can.*, 759 F.3d 942, 944 (8th Cir. 2014). Under this standard, MetLife's interpretation would only be an abuse of discretion if it were unreasonable. *See Johnson v. U.S. Bancorp Broad-Based Change in Control Severance Pay Program*, 424 F.3d 734, 738 (8th Cir. 2005). But there is a problem. Although the parties both spilled a lot of ink debating whether MetLife's interpretation of the exclusion was reasonable, neither actually identified what meaning MetLife gave "caused" or "contributed to." Having reviewed MetLife's final denial letter ourselves, we see why. MetLife did not explain how it interpreted the exclusion's terms.

We have repeatedly held that a plan administrator's interpretation of a plan is reviewed de novo when the plan does not afford the administrator discretion to construe the plan's terms. *See, e.g.*, *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998 (8th Cir. 2005) (en banc). So naturally, when the plan administrator chooses not to exercise its discretion to interpret a term, as was the case here, we must decide what the term means de novo.[2] "When reviewing an ERISA plan de novo, we interpret the terms of the plan by giving the language its common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." *Adams v. Cont'l Cas. Co.*, 364 F.3d 952, 954 (8th Cir. 2004) (cleaned up). In so doing, "[r]ecourse to the ordinary, dictionary definition of words is not only reasonable, but may be

---

[2]Although the parties agreed that we should review MetLife's interpretation of the exclusion for abuse of discretion, their "concession on the standard of review does not bind the court . . . ." *United States v. Perrin*, 926 F.3d 1044, 1046 (8th Cir. 2019). And practically, since MetLife did not exercise its discretion, it would indeed be strange to evaluate whether it abused it.

necessary." *Spizman v. BCBSM, Inc.*, 855 F.3d 924, 927 (8th Cir. 2017) (quoting *Khoury*, 615 F.3d at 955).

The exclusion at issue states, "We will not pay benefits under this section for any loss caused or contributed to by . . . physical or mental illness or infirmity, or the diagnosis or treatment of such illness or infirmity." There is no question that Mrs. Kleinsteuber was using home dialysis to treat her ESRD, a physical illness or infirmity, before her death. Rather, the heart of the parties' dispute is whether her home dialysis caused or contributed to her death. According to popular dictionaries, "cause" means "something that brings about an effect or a result." *Cause*, Merriam-Webster, https://perma.cc/F4EZ-EHC4; *accord Cause*, Cambridge Dictionary, https://perma.cc/4Z4L-L8Y4 (defining "cause" as "the reason why something, especially something bad, happens"). And "contribute" means "to be one of the reasons why something happens." *Contribute*, Cambridge Dictionary, https://perma.cc/SVQ3-TWEQ; *accord Contribute*, Oxford Learner's Dictionaries, https://perma.cc/VY5K-JRM8 (defining "contribute" as "to be one of the causes of something").

Thus, the exclusion applied if either Mrs. Kleinsteuber's ESRD or home dialysis brought about or was one of the reasons for her death.

## D.  Substantial Evidence

Finally, the plan gives MetLife "discretionary authority . . . to determine eligibility for and entitlement to [p]lan benefits . . . ." So we review MetLife's application of the exclusion to the facts of this case for abuse of discretion. *See Johnson*, 775 F.3d at 986–87. Under this standard, "a plan administrator's decision to deny . . . benefits must stand if it is reasonable, that is, if it is supported by 'substantial evidence.'" *Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 841 (8th Cir. 2001) (quoting *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001)). Evidence is substantial if "a reasonable mind might accept" it "as adequate to support a conclusion." *King*, 414

F.3d at 999 (quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 900 & n.10 (8th Cir. 1996)).

In its final denial letter, MetLife relied on the letter from Mrs. Kleinsteuber's doctor and reports from the sheriff's and medical examiner's offices, some of which recount statements from Mr. and Mrs. Kleinsteuber, to support its conclusion that the exclusion applied.

Specifically, the letter from Mrs. Kleinsteuber's doctor states that Mrs. Kleinsteuber told Mr. Kleinsteuber she "had not ended the dialysis the correct way," and it concludes Mrs. Kleinsteuber died "due to critical blood loss" because of her "mistake of dislodging her port line . . . ." The sheriff's office incident report explains that Mrs. Kleinsteuber told Mr. Kleinsteuber, "I think I may have killed myself" and "do not let me die" when he arrived home. And the report notes that Mrs. Kleinsteuber "had blood leaking from her upper right chest port" when first responders arrived; that she was bleeding because "she did not end dialysis the right way and did not close her port on her right upper chest"; and that first responders "closed the port and the blood loss stopped." The medical examiner's scene form lists the "[c]ircumstances" of Mrs. Kleinsteuber's death as "dialysis patient, tubes had come undone." And the medical examiner's case packet narrative states that Mr. Kleinsteuber found Mrs. Kleinsteuber "on the floor near the dialysis machine"; that she "indicated" to him "she did something wrong and pulled the port line from the machine"; that he "believe[d] that she panicked when the machine started to set off alarms and may have dislodged the line while moving about"; and that Mrs. Kleinsteuber "did have trouble at times running the machine . . . ."

Comparing this evidence to the exclusion's language, we conclude MetLife based its determination that Mrs. Kleinsteuber's home dialysis caused or contributed to her death on substantial evidence. As discussed above, the exclusion applied if Mrs. Kleinsteuber's dialysis either brought about or was one of the reasons for her death. These documents all suggest Mrs. Kleinsteuber died as a result of extreme blood loss and that she was bleeding because she did not close her port after either

-11-

dislodging it during her dialysis or after trying to conclude her treatment. A reasonable mind could accept this evidence as adequate to support MetLife's determination that Mrs. Kleinsteuber's dialysis was at least one reason for her death.

Mr. Kleinsteuber argues, to the contrary, that closing a chest port is not part of dialysis, that the exclusion does not apply because Mrs. Kleinsteuber's dialysis only contributed to her accident, rather than her death, and that MetLife wrongly weighed some of the evidence in the record. We disagree. First, one need look no further than the sad facts of this case to understand that closing a chest port is the final step of dialysis treatment. Second, Mr. Kleinsteuber may be correct that the exclusion would not apply if Mrs. Kleinsteuber's home dialysis had only contributed to her accident, rather than her death. But in this case, substantial evidence supports MetLife's conclusion that Mrs. Kleinsteuber's home dialysis contributed to her death, as her failure to close her port necessarily led to the blood loss that caused her death. And third, it is well settled that we cannot substitute our own weighing of the evidence for MetLife's. *See Willcox*, 552 F.3d at 702.

## III. Conclusion

In sum, Mr. Kleinsteuber failed to show that any procedural irregularities or MetLife's inherent conflict of interest affected its adjudication of his claim, and substantial evidence supported MetLife's conclusion that Mrs. Kleinsteuber's home dialysis contributed to her death. We therefore affirm the district court's judgment and uphold MetLife's denial of Mr. Kleinsteuber's claim.

_____