# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1164
No. 06-2923

_____

Jerry Jessup, et al.,

    Plaintiffs - Appellees,

v.

Alcoa, Inc., et al.

    Defendants - Appellants.

\*
\*
\*
\*  Appeals from the United States
\*  District Court for the
\*  Eastern District of Arkansas.
\*
\*
\*

_____

Submitted:  December 15, 2006
Filed:  April 2, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

Alcoa, Inc., sold two facilities as going concerns to an unrelated purchaser that continued to operate the facilities under the name Almatis Group. After the sale, salaried employees who continued work without interruption as employees of the purchaser applied to Alcoa for early retirement benefits under the "Rule of 65" provisions of the Alcoa Retirement Plan I (the Plan). When their claims were denied by the Alcoa Benefit Appeals Committee, they commenced this action against Alcoa and the Plan for wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a). The district court granted plaintiffs summary judgment on this claim and subsequently awarded them attorneys'

fees and costs as prevailing parties. Alcoa separately appeals both rulings. We review the grant of summary judgment *de novo*, applying the same standard as the district court. Stearns v. NCR Corp., 297 F.3d 706, 708 (8th Cir. 2002), cert. denied, 537 U.S. 1160 (2003). When an ERISA plan grants the administrator discretion to construe the plan and to determine benefits eligibility, as in this case, both courts must apply a deferential abuse-of-discretion standard in reviewing the plan administrator's decision. McKeehan v. Cigna Life Ins. Co., 344 F.3d 789, 792 (8th Cir. 2003). Applying that standard here, we reverse.

Plaintiffs were not eligible for Rule of 65 benefits under the relevant provisions of the lengthy Plan document. Article 7.2(b)(vi)(A) provided that employees who meet certain age and tenure requirements (as plaintiffs did) became eligible for Rule of 65 benefits if they were "absent due to a Permanent Separation from Employment resulting from the permanent shutdown of . . . the plant . . . (as determined by Alcoa)." Article 2 defined the term "Permanent Separation from Employment" as:

> [T]he termination of the employment of an Eligible Employee . . . through no fault of his or her own for lack of work for reasons associated with the business . . . . In no event does a Permanent Separation from Employment occur if the Eligible Employee is offered suitable employment by the Company, a Subsidiary, or a successor employer.

In letters denying plaintiffs' administrative appeals, the Alcoa Benefit Appeals Committee explained that they were not eligible for Rule of 65 benefits because (i) they were terminated due to the sale of the business, not "for lack of work," and (ii) they received suitable offers of employment from Almatis, a successor employer. If the Plan language is controlling, this decision was clearly not an abuse of discretion.

However, the Plan's summary plan description (SPD) employed different language in summarizing eligibility for the Plan's Rule of 65 benefits. After setting

forth age and tenure requirements, the SPD recited that to qualify for rule of 65 benefits an employee must:

- be absent for one year due to layoff . . . or have been placed on permanent layoff; and

- Alcoa and its subsidiaries fail to offer you suitable long-term employment (as determined by Alcoa).

As a general rule, when the SPD conflicts with the plan it purports to summarize, the SPD provision governs. See Koons v. Aventis Pharm., Inc., 367 F.3d 768, 775 (8th Cir. 2004). Therefore, plaintiffs argue, they are eligible for Rule of 65 benefits because they were permanently laid off when the facilities were sold and they were not offered suitable long-term employment *by Alcoa and its subsidiaries*, as the SPD provided. The district court agreed, concluding that the Plan and the SPD were in conflict because the Plan provided that an employee was ineligible if he or she received an offer of suitable employment "from the Company, a Subsidiary, or a successor employer," whereas the SPD exclusion was limited to offers from "Alcoa and its subsidiaries." Given this conflict, the court concluded, the denials of benefits must be reversed because they were based upon "an additional qualification" (offers of employment from Almatis, the successor) not disclosed in the SPD.

The district court's Order did not address a distinct issue argued by the parties in the district court and on appeal. Alcoa argues, as the Benefits Appeal Committee letters explained, that plaintiffs did not suffer a "permanent layoff" within the meaning of the SPD provision because, although they ceased working for Alcoa, their facility was sold as a going concern and they continued working for the purchaser without interruption or a substantial change in the terms of their employ. Plaintiffs argue they were nonetheless permanently laid off, citing only a dictionary definition of the word "layoff." Alcoa, on the other hand, relies on numerous ERISA and federal labor law decisions. Though the specific plan language at issue varied, the decisions were

uniform in concluding that, when a facility is sold or its right to conduct contract operations is assigned to a new owner, employees who continue to work for the new owner under substantially the same terms and conditions are not entitled to early retirement or severance benefits.[1]  Retired Supreme Court Justice Byron R. White sitting by designation in the Tenth Circuit explained the common-sense rationale for these consistent decisions in Headrick, 24 F.3d at 1276:

> After all, when an employee retains his job despite a transfer, he has not suffered for "lack of work."  Moreover, inhering in the term "laid off" is the understanding the affected employee no longer holds the same job he did prior to being "laid off" . . . .  The difficulty of squaring appellants' claim to being "laid off for lack of work" with the ordinary meaning of the phrase is illustrated by the trouble we have in imagining any Rocky Flats employee describing himself to family, friends, or, say, the local welfare office . . . as having just been "laid off for lack of work" after [the successor] had provided him with the very same job and benefits he enjoyed with Rockwell the day before.

---

[1] See Brandis v. Kaiser Alum. & Chem. Corp., 47 F.3d 947, 949 (8th Cir. 1995) ("permanent shutdown of the plant"); Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1276 (10th Cir. 1994) ("laid off for lack of work"); Schroeder v. Phillips Pet. Co., 17 F.3d 1147, 1148 (8th Cir. 1994) (same); Blank v. Bethlehem Steel Corp., 926 F.2d 1090, 1092-4 (11th Cir. 1991) ("layoff . . . as a result of a permanent shutdown"), cert. denied, 502 U.S. 938 (1991); Rowe v. Allied Chem. Hourly Employees' Pension Plan, 915 F.2d 266, 268-69 (6th Cir. 1990) ("layoff"); Lakey v. Remington Arms Co., 874 F.2d 541, 545 (8th Cir. 1989) ("termination . . . caused by lack of work"); Acton v. Tosco Corp., 815 F.2d 1161, 1162 (8th Cir. 1986) ("layoffs"); Anderson v. Ideal Basic Indus., 804 F.2d 950, 953 (6th Cir. 1986) ("termination of employment resulting from a permanent shutdown of a plant").  Plaintiffs urge us to ignore the earlier cases because they applied an arbitrary and capricious standard of review that gave way to the abuse of discretion standard after the Supreme Court's decision in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).  However, substantively "this is a distinction without a difference." Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 572 n.3 (8th Cir. 1992).

Viewed from the perspective of these prior decisions, the SPD's summary of the eligibility criteria for Rule of 65 benefits did not conflict with the Plan. The SPD explained that Rule of 65 benefits were limited to employees "placed on permanent layoff." Prior cases established the relevant context -- employees are not "placed on permanent layoff" when, as in this case, a facility is sold and they are offered comparable, uninterrupted employment by the new owner. In other words, by limiting eligibility to "permanent layoff" situations, the SPD incorporated the substance of the Plan's more explicit reference to offers of suitable employment by a successor. This interpretation does not render meaningless the SPD's additional eligibility requirement that "Alcoa and its subsidiaries" failed to offer suitable long-term employment. That requirement covers a different situation -- when a facility is sold, employees are *not* employed by the purchaser, and Alcoa then terminates the retained employees without offering suitable alternative employment.

In conclusion, though the Plan and the SPD used different language in defining eligibility for Rule of 65 benefits, the Alcoa Benefit Appeals Committee did not abuse its discretion in concluding that plaintiffs were not eligible under either definition. Therefore, the decisions of the Plan administrator must be affirmed. Turning to the second appeal, plaintiffs concede that the district court's award of attorneys' fees and costs must be overturned if they are not prevailing parties.

Accordingly, we reverse that portion of the district court's judgment that overturned Alcoa's denial of Rule of 65 benefits and the district court's orders dated July 10 and July 13, 2006, awarding plaintiffs attorneys' fees and costs.

_____