# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1557
_____

Raleigh Spizman; Robert Spizman

*Plaintiffs - Appellants*

v.

BCBSM, Inc., doing business as Blue Cross Blue Shield of Minnesota

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: December 13, 2016
Filed: May 4, 2017

_____

Before LOKEN, MURPHY, and KELLY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Raleigh Spizman was hospitalized in November 2012 and returned home in February 2013, where a home health care provider and personal care assistants began providing 24-hour care. Blue Cross Blue Shield of Minnesota provided Raleigh's health care insurance coverage under a group policy sponsored by her husband Robert's employer. When Blue Cross denied the Spizmans "round-the-clock" in-home health care coverage, they brought this federal action, asserting claims for relief

in six counts. The district court[1] granted Blue Cross's motion to dismiss four counts, the parties stipulated to dismiss the remaining two counts with prejudice, and the court entered final judgment in favor of Blue Cross. The Spizmans appeal the dismissal of Counts I, II, and VI, claims governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq*. We take the facts alleged in their First Amended Complaint as true and also consider insurance policy documents placed in the district court record. See Enervations, Inc. v. Minn. Min. & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004). Reviewing the grant of a motion to dismiss *de novo*, we affirm. Harris v. The Epoch Grp., L.C., 357 F.3d 822, 824-25 (8th Cir. 2004) (standard of review).

## I. Background.

On November 18, 2012, Raleigh Spizman was hospitalized and placed on a ventilator after developing acute aspiration pneumonia. Before she returned home, the Spizmans decided to hire a home health agency to manage her pulmonary rehabilitation and weaning off the ventilator. The Blue Cross group health care policy issued to Robert's employer was renewed each calendar year. The Complaint alleged that a Blue Cross agent assured Robert that the 2013 policy would provide the same coverage as the 2012 policy and would cover Raleigh's home health care needs. In early 2013, a Blue Cross claims representative told Robert there would be coverage and benefits for Raleigh's care. Despite these assurances, Blue Cross denied coverage of the Spizmans' claim for 24-hour in-home health care.

After Blue Cross denied their internal appeals, the Spizmans brought this federal court action. Blue Cross moved to dismiss five of the six counts. Magistrate

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of the Honorable Tony N. Leung, United States Magistrate Judge for the District of Minnesota.

Judge Leung issued a Report and Recommendation recommending dismissal of four counts, which the district court adopted after *de novo* review. Spizman v. BCBSM, Inc., 2015 WL 4569249, at \*11 (D. Minn. July 27, 2015). Not dismissed were Count III, a claim under 29 U.S.C. § 1132(a)(1)(b) to recover benefits due under the ERISA plan, and Count IV, a claim under 29 U.S.C. § 1132(a)(3) for "other appropriate equitable relief" from Blue Cross's alleged breach of fiduciary duty in refusing to pay plan benefits. The district court subsequently dismissed Counts III and IV with prejudice pursuant to the parties' stipulation. The issues before us are the Spizmans' appeal of the dismissal of Counts I, II, and VI.

## II. Count I and Count II.

In Counts I and II, the Spizmans sought a declaratory judgment that they are entitled to health care coverage for "Raleigh Spizman's home health care needs and requirements," which, the Complaint alleged, included "intermittent skilled nursing care beyond one visit per day." The Blue Cross 2012 Certificate of Coverage provided home health care coverage for "[s]killed care ordered in writing by a physician and provided by [approved] home health agency employees," including "[s]ervices that are medically necessary and provided by a licensed nurse." But the policy excluded "services for or related to private-duty nursing." The policy did not define "private-duty nursing." The 2013 Certificate of Coverage likewise covered skilled home health care services including "intermittent skilled nursing care in your home." But the policy excluded "extended hours skilled nursing care, also referred to as private-duty nursing care." The policy defined "intermittent skilled nursing care" as "a visit by a registered nurse or licensed practical nurse of up to four (4) consecutive hours in duration."

**A.** In Count I, the Spizmans alleged that the 2013 policy Certificate substantially reduced the coverage provided by the 2012 policy by limiting the

coverage of "intermittent skilled nursing care" to one four-hour visit; that Blue Cross violated its affirmative duty to notify the Spizmans of this reduction in coverage, rendering the exclusion in the 2013 policy void under Minnesota law; and that the 2012 policy covered Raleigh's "round-the-clock 24-hour care" because its "private-duty nursing care" exclusion was ambiguous and therefore must be construed against the insurer under Minnesota law.

In dismissing Count I, Magistrate Judge Leung concluded that interpreting "private-duty nursing" as excluding Raleigh's round-the-clock in-home nursing care "is consonant with the term's commonly understood meaning and dictionary definition." Spizman, 2015 WL 4569249, at *5. We agree. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines "private-duty," when used as an adjective describing a nurse, as "caring for a single patient either in the home or in a hospital." (unabridged ed. 1986). Similarly, Medicaid regulations provide that "[p]rivate duty nursing services means nursing services for beneficiaries who require more individual and continuous care than is available from a visiting nurse." 42 C.F.R. § 440.80. Providing Raleigh round-the-clock in-home nursing care is nursing "for a single patient . . . in the home," and is "more individual and continuous care than is available from a visiting nurse." Thus, the Spizmans' claim for round-the-clock in-home nursing care fell within the plain meaning and common understanding of the "private-duty nursing" exclusion in the 2012 policy.

On appeal, the Spizmans argue that, under Minnesota law, "private-duty nursing" is an ambiguous term that must be construed in their favor. This contention is contrary to well-settled federal law. In construing ambiguities in an ERISA plan, we apply federal law, not Minnesota law, construing disputed language "without deferring to *either* party's interpretation." Brewer v. Lincoln Nat'l Life Ins. Co., 921 F.2d 150, 154 (8th Cir. 1990) (quotation omitted), cert. denied, 501 U.S. 1238 (1991). We do not apply "the contra insurer or reasonable expectation doctrines, both of

which are general rules of contract construction not specific to the insurance industry." Meester v. IASD Health Servs. Corp., 963 F.2d 194, 197 (8th Cir. 1992). Because an ERISA plan must be "written in a manner calculated to be understood by the average plan participant," 29 U.S.C. § 1022(a), we accord policy terms their ordinary, plain meaning. See Knowlton v. Anheuser-Busch Cos. Pension Plan, 849 F.3d 422, 429 (8th Cir. 2017); Kitterman v. Coventry Health Care of Iowa, Inc., 632 F.3d 445, 448 (8th Cir. 2011). "Recourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary." Khoury v. Grp. Health Plan, Inc., 615 F.3d 946, 955 (8th Cir. 2010) (quotation omitted).

We review a plan administrator's decision under the same standard of review as the district court. See Jessup v. Alcoa, Inc., 481 F.3d 1004, 1006 (8th Cir. 2007). Assuming without deciding that the appropriate standard is *de novo* review of the 2012 policy's "private-duty nursing" exclusion, we agree with the district court that the Spizmans' claim for round-the-clock in-home nursing care, the only claim asserted in Count I, fell within the plain language of the "private-duty nursing" exclusion. Accord Krauss v. Oxford Health Plans, Inc., 418 F. Supp. 2d 416, 433 (S.D.N.Y. 2005) ("private or special duty" nursing exclusion barred reimbursement for "constant care solely" to insured), aff'd, 517 F.3d 614, 629 (2d Cir. 2008). Thus, the district court properly dismissed Count I for failure to state a claim, whether or not the 2013 policy reduced this coverage.[2]

**B.** In Count II, the Spizmans alleged that the 2013 policy, if applicable, also covered their claim for round-the-clock in-home nursing services. Blue Cross ruled

---

[2]The Spizmans' alternative argument that they are entitled to coverage under the 2012 policy's benefit substitution provision is without merit. The policy provides that "benefit substitution cannot be used to allow coverage for services or supplies excluded by the Plan." The policy excluded their claim for round-the-clock in-home nursing care, so benefit substitution did not apply.

that this claim was barred by the exclusion of "extended hours skilled nursing care, also referred to as private-duty nursing care." The Spizmans assert their claim was within the coverage for "intermittent skilled nursing care." They argue that the definition of that term -- a visit by a registered or licensed practical nurse of up to four hours duration -- did not include the words "per day," and therefore they were allowed to stack multiple four-hour visits in a single day to meet Raleigh's round-the-clock in-home nursing needs. The district court rejected this contention, concluding that Blue Cross did not abuse its discretion in interpreting the 2013 policy provisions covering "intermittent skilled nursing care" and excluding "extended hours skilled nursing care."

When an ERISA plan grants discretionary authority to make benefit determinations, the administrator's interpretation of the plan is subject to abuse-of-discretion review. Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps., 812 F.3d 628, 630-31 (8th Cir. 2016). The Spizmans concede that the 2013 policy expressly granted Blue Cross discretionary authority. But they argue the district court erred in reviewing Blue Cross's adverse decision for abuse of discretion because "a palpable conflict of interest or a serious procedural irregularity existed, which . . . caused a serious breach of the [claim] administrator's fiduciary duty." Id. at 631 (quotation omitted). While Blue Cross did have a financial conflict of interest as both payor and plan administrator, the Supreme Court clarified in Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105 (2008), that this conflict does not change the abuse-of-discretion standard of review. Rather, "reviewing judge[s] . . . take account of the conflict when determining whether the [claims administrator], substantively or procedurally, has abused [its] discretion." Id. at 115. The district court properly gave "some weight" to this conflict of interest in reviewing Blue Cross's decision. Spizman, 2015 WL 4569249, at *6. As in Johnson v. United of Omaha Life Ins. Co., the procedural irregularities alleged by the Spizmans do not

"trigger [*de novo* review based on] a total lack of faith in the integrity of the decision making process." 775 F.3d 983, 988 (8th Cir. 2014) (quotation omitted).

When a plan administrator's decision is reviewed for abuse of discretion, "the administrator's interpretation of uncertain terms in a plan will not be disturbed if reasonable." King v. Hartford Life & Acc. Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc) (quotation omitted). "Where a plan fiduciary offered a reasonable interpretation of a disputed plan provision, courts may not replace it with an interpretation of their own -- and therefore cannot disturb as an 'abuse of discretion' the challenged benefits determination." Ingram, 812 F.3d at 634 (quotation omitted).

The Spizmans assert that the 2013 policy should be construed as covering multiple nursing care visits each day because the policy did not define intermittent care as limited to one four-hour visit. But this interpretation would be unreasonable because, as the district court noted, stacking multiple four-hour nursing visits would nullify the policy exclusion of "extended hours skilled nursing care," which the policy defined as care that is "continuous." Spizman, 2015 WL 4569249, at *7; see King, 414 F.3d at 1004-05. Thus, even if Blue Cross's decision is reviewed *de novo*, rather than for abuse of discretion, we agree with the district court that denial of the Count II claim for round-the-clock in-home nursing care must be upheld.

For these reasons, we affirm the dismissal of Count I and Count II of the First Amended Complaint. The Spizmans argue that the district court acted prematurely in dismissing these claims without factual development of their allegations that a Blue Cross claims representative told the Spizmans that the 2013 policy would cover Raleigh's home health care; that Blue Cross granted some claims, denied some claims, and held others in process as part of a ploy to fraudulently bar external review of its claims decisions; and that Blue Cross unreasonably delayed deciding their internal appeals. These allegations might have been relevant to the claim in Count

III to recover benefits due under the ERISA plan, or the claim in Count IV for breach of fiduciary duty. But the Spizmans elected to dismiss those claims with prejudice. As the claims in Count I and Count II for round-the-clock in-home nursing services were contrary to the plain meaning of the private-duty nursing exclusions in the 2012 and 2013 policies, those Counts were properly dismissed.

### III. Count VI.

In Count VI, a claim for equitable estoppel, the Spizmans alleged that they were entitled to equitable relief under 29 U.S.C. § 1132(a)(3) that grants the home health care benefits Blue Cross's agents promised would be paid under ambiguous policy terms. The district court dismissed Count VI because the policy plainly excluded "extended hours skilled nursing care," and the Spizmans "may not use an estoppel theory to enlarge benefits under a written plan." Spizman, 2015 WL 4569249, at *11. The principle is sound. See Neumann v. AT&T Commnc'ns, Inc., 376 F.3d 773, 784 (8th Cir. 2004); Fink v. Union Cent. Life Ins. Co., 94 F.3d 489, 492 (8th Cir. 1996). We conclude it was correctly applied.

As pleaded in Count I and Count II, the Spizmans claimed coverage for round-the-clock in-home skilled nursing care that the policy excluded. Nothing in Count VI suggested that any other level of benefits was being claimed in their estoppel theory. Thus, the district court soundly reasoned that Count VI sought an improper enlargement of plan benefits. The court declined to dismiss Count IV, a broad claim for equitable relief under § 1132(a)(3) for Blue Cross's alleged breaches of fiduciary duty, because "the instant dispute is still at the motion to dismiss stage." Spizman, 2015 WL 4569249, at *10. Thus, the only § 1132(a)(3) claim the court dismissed on the pleadings was one for benefits excluded by the plain meaning of the terms of the plan. To the extent the Spizmans intended to assert an equitable estoppel claim for

some lesser level of benefits, they voluntarily relinquished that claim by dismissing Count IV with prejudice.

For these reasons, the judgment of the district court is affirmed.

———————————————